# In the United States Court of Federal Claims

No. 19-859
(Filed:  14 March 2025)[*]
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| E-NUMERATE SOLUTIONS, INC., and | * |
| E-NUMERATE SOLUTIONS, LLC, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

Plaintiffs filed this action in 2019 accusing the government of infringing patents related to data processing systems and a computer markup language for use in financial accounting, data browsing, and data manipulation.  Following claim construction, the Court set a schedule for further proceedings with fact discovery beginning on 1 April 2024 and closing on 1 October 2025.  *See* 29 Mar. 2024 Order at 2–3, ECF No. 118.  The parties raised several discovery disputes,[1] and the government ultimately agreed to produce portions of the disputed information by 10 January 2025.  *See* 11 Dec. 2024 JSR at 3–12, ECF No. 145.  In doing so, the government "produced over 5,000 pages of documents," served supplemental disclosures "identifying individuals knowledgeable" about the subjects of the discovery disputes, and made "source code available for review on a secure computer at the Securities and Exchange Commission ('SEC')" pursuant to the Protective Order, ECF No. 41.  *See* 31 Jan. 2025 Joint Status Report ("JSR") at 8–9, ECF No. 151.

On 22 January 2025, plaintiffs disclosed to the government "the signed undertaking" and "resume" of their proposed consultant, Mr. Russel Davis, seeking to allow the consultant to "gain[] access to Confidential and Highly Confidential documents produced in this litigation." Gov't's Mot. for an Extension to Obj. to Pls.' Proposed Consultant and for a Dep. with Pls.'

---

[*] This Order was initially filed under seal on 10 March 2025 pursuant to the Protective Order in this case, ECF No. 41.  *See* 10 Mar. 2025 Order, ECF No. 160.  The Court provided the parties the opportunity to submit proposed redactions by 5:00 p.m. (ET) on 14 March 2025.  As the parties confirmed via email they have no redactions, this Order is now reissued in its original form.

[1] More detail on the discovery and scheduling disputes in this case and the Court's orders resolving the disputes can be found in the in the Court's 6 December 2024, 13 December 2024, and 6 February 2025 Orders.  *See* 6 Dec. 2024 Order, ECF No. 142; 13 Dec. 2024 Order, ECF No. 146; 6 Feb. 2025 Order, ECF No. 152.

Proposed Consultant ("Gov't's Mot. for Leave") at 1–2, ECF No. 154; *see* Gov't's Mot. for Leave, Ex. A (Davis Original Resume), ECF No. 154-1; Gov't's Mot. for Leave, Ex. F (Signed Undertaking of Davis), ECF No. 154-6. On 27 January 2025, the government requested plaintiffs to disclose Mr. Davis's consulting engagements "over the past five years" pursuant to the Protective Order. *See* Gov't's Mot. for Leave at 2; *see also* Gov't's Mot. for Leave, Ex. B at 2 (Government Counsel's 27 January 2025, 5:07:39 p.m. Email to Plaintiffs' Counsel), ECF No. 154-2. On 31 January 2025, plaintiffs produced "a new resume for Mr. Davis and an attachment purporting to list the consulting activities of Mr. Davis from 2020-2025." Gov't's Mot. for Leave at 2; *see* Gov't's Mot. for Leave, Ex. C (Davis Updated Resume), ECF No. 154-3; Gov't's Mot. for Leave, Ex. D (Davis Consulting Activities Since 2020), ECF No. 155-1. On 5 February 2025, the government "lodged its objection" regarding "the possibility that Mr. Davis's participation in the case and consultation for [plaintiffs] conflicts with conflict-of-interest provisions with the [g]overnment." Gov't's Mot. for Leave at 2; *see* Gov't's Mot. for Leave, Ex. E at 2 (Government Counsel's 5 February 2025, 11:15:27 a.m. Email to Plaintiffs' Counsel), ECF No. 155-2. Specifically, the government notes "Mr. Davis engaged in consulting work on behalf of the [g]overnment during the past five years, *i.e.*, during the pendency of this lawsuit" and "several of those engagements were related to specific agencies named in this lawsuit." Gov't's Mot. for Leave at 2 (emphasis original). Plaintiffs responded "the parties were at an impasse," Pls.' Resp. in Opp. to Gov't's Mot. for Leave ("Pls.' Resp.") at 5, ECF No. 156, but did not provide any substantive reasons as to why the government's objections were not warranted, *see* Pls.' Resp., Ex. C at 2 (Plaintiffs' Counsel's 5 February 2025 11:35 a.m. Email to Government's Counsel), ECF No. 156-3; *see also* Pls.' Resp., Ex. B at 3 (Plaintiffs' Counsel's 13 February 2025 12:24 p.m. Email to Government's Counsel), ECF No. 156-2.

On 14 February 2025, the government filed a motion for extension of time to object to Mr. Davis and seeking to depose him for a limited deposition, pursuant to Rule 30(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), regarding his resume and consulting engagement in the last five years as they relate to "the possibility [his] participation in the case and consultation for [plaintiffs] conflicts with conflict-of-interest provisions with the [g]overnment." *See* Gov't's Mot. for Leave at 2; *see also* RCFC 30(a)(2) ("A party must obtain leave of court, and the court must grant leave to the extent consistent with RCFC 26(b)(1) and (2)."). On 27 February 2025, plaintiffs responded. *See* Pls.' Resp. On 6 March 2025, the government replied. *See* Gov't's Reply in Supp. of Gov't's Mot. for Leave ("Gov't's Reply"), ECF No. 159. Amid this briefing, on 27 February 2025, third-Party Econometrica, Inc.—where Mr. Davis serves as director and senior economist—filed a motion to quash the government's document and deposition subpoenas. *See* Third Party Econometrica, Inc.'s Mot. to Quash the Subpoena served by Gov't, ECF No. 157. That same day, the government also filed a motion for a protective order to preclude Mr. Davis's access to the government's confidential information. *See* Gov't's Mot. to Preclude Access to Confidential Doc. to Pls.' Proposed Consultant, ECF No. 158. The government seeks Mr. Davis be denied access to the government's confidential information under the current Protective Order or for the Court to enter an amended Protective Order precluding Mr. Davis from gaining access to the "vast quantity of confidential documents produced in this litigation because it would be impossible for him to separate the knowledge gained from exposure to those documents with his ongoing commercial pursuits." *See id.* at 1. Thus, the government seeks to depose Mr. Davis on his current involvement with plaintiffs and

other consultancy arrangements, to determine whether he should be granted access to the government's confidential information.  *See id.*

As an initial matter, plaintiffs in opposition argue allowing the government's Motion would "delay the proceedings and prevent [plaintiffs] from completing fact discovery."  Pls.' Resp. at 8.  Plaintiffs, however, do not provide any detail as to how a four-hour deposition would cause a delay and fail to cite any concrete evidence of harm or prejudice allowing deposition of Mr. Davis would cause.  *Cf.* Pls.' Resp.  Plaintiffs further ignore discovery in this case is not set to close for *seven* months.  *See* 29 Mar. 2024 Order at 2–3 (setting the close of fact discovery for 1 October 2025).  Any potential delay therefore is likely due, at least in part, to plaintiffs' own actions given their repeated amendments to the Complaint, *see, e.g.*, Pls.' Mot. for Leave to File Third Am. Compl., ECF No. 122 (seeking leave to amend the Complaint five years into the litigation), and disclosure of Mr. Davis as not only a fact witness—the founder of e-Numerate and inventor of the patents-in-suit—but also as a consultant, six years into this litigation, *see* Gov't's Mot. for Leave, Ex. F (Signed Undertaking of Davis).  Accordingly, the Court finds the government's interest to protect its sensitive information outweighs any delay caused by Mr. Davis's deposition, especially considering the deposition would be limited to four hours and would be speedy and "cost-effective" as "Mr. Davis resides Bethesda, Maryland (which is only a few miles from the SEC's offices)."  *See* Pls.' Resp. at 1; *see also McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1357 (Fed. Cir. 2001) ("Trial courts are given broad latitude in managing and scheduling cases."); *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) (citation omitted) ("Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court.").

Next, plaintiffs argue the government's Motion and objection to Mr. Davis is untimely for being a few days late, and the government "has not made any showing of 'good cause' and/or 'excusable neglect.'"  Pls.' Resp. at 4.  At first glance, the Court suspects the government's Motion was timely.  *See* Gov't's Reply at 2 n.1.  Indeed, the government did not learn of Mr. Davis's engagement in this case or receive his original resume until 22 January 2025, and the updated resume and list of consulting activities within the last five years on 31 January 2025.  *See* Gov't's Mot. for Leave at 2; *see also* Gov't's Mot. for Leave, Ex. A (Davis Original Resume); Gov't's Mot. for Leave, Ex. C (Davis Updated Resume); Gov't's Mot. for Leave, Ex. D (Davis Consulting Activities Since 2020); Gov't's Mot. for Leave, Ex. F (Signed Undertaking of Davis).  The Court, however, needs not consider the timeliness of the government's Motion given good cause exists.  *See* 6 Dec. 2024 Order at 2 (noting the parties agreed the Court has "discretion" to grant leave to the parties).  Importantly, the Court "'has wide discretion in setting the limits of discovery,'" *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)); *see McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases."), and as such "[q]uestions of the scope and conduct of discovery are . . . committed to the discretion of the trial court," *Florsheim Shoe Co.*, 744 F.2d at 797 (citation omitted); *see* RCFC 26 (b)(2)(A) (bestowing authority and discretion to the Court to "alter the limits" and "scope" of depositions).  Here, the government raises legitimate concerns over Mr. Davis's access to confidential government information.  *See, e.g.*, Gov't's Mot. for Leave at 3 ("Mr. Davis engaged in consulting work on behalf of the [g]overnment during the past five years, *i.e.*, during the pendency of this lawsuit.  Moreover, several of those engagements were related to specific

agencies named in this lawsuit . . . . [He] is a named inventor of the patents-in-suit and a co-founder of e-Numerate. He has attended multiple hearings in this litigation and e-Numerate has described him as a 'very important person in this litigation.' Mr. Davis has assisted e-Numerate's counsel in this litigation including with his presentation material. Moreover, e-Numerate has never denied that Mr. Davis currently has a controlling interest in the company and at a minimum he has a business arrangement to consult with its litigation counsel." (citations omitted)), 3–4 (noting concerns over potential violations of conflict of interest and 12 C.F.R. Part 366), 4 ("[T]he scant details provided in his disclosure reference activities such as 'systems integration,' and 'database development' suggest an overlap with the subject matter of this litigation such that he may use the information learned from this litigation for a competitive business purpose in the future either through his current employer or developing software in the private sector."). Mr. Davis's two-page resume is also too high level and lacks sufficient detail to alleviate the government's concerns. *See* Gov't's Mot. for Leave, Ex. E at 2 (Government's Counsel's 5 February 2025, 11:15:27 a.m. Email to Plaintiffs' Counsel); *cf.* Gov't's Mot. for Leave, Ex. C (Davis Updated Resume); Gov't's Mot. for Leave, Ex. D (Davis Consulting Activities Since 2020). The government further discovered a "significantly more detailed resume" for Mr. Davis than plaintiffs provided. *See* Gov't's Reply at 3 ("[T]he Government discovered a significantly more detailed resume for Plaintiffs' proposed consultant than the one originally provided by Plaintiffs, referencing multiple 'system design,' 'system integration' and 'database' projects. Given the overlap between this work, the confidential Government systems at issue, and the patents-in-suit, a limited deposition is warranted." (citations omitted)). Indeed, plaintiffs failed to engage in any substantive discussions to alleviate the government's concerns. *See* Pls.' Resp., Ex. C at 2 (Plaintiffs' Counsel's 5 February 2025 11:35 a.m. Email to Government's Counsel); *see also* Pls.' Resp., Ex. B at 3 (Plaintiffs' Counsel's 13 February 2025 12:24 p.m. Email to Government's Counsel). In response, plaintiffs argue the government's "requested deposition seeks information that is irrelevant." Pls.' Resp. at 6. As outlined above, however, Mr. Davis's deposition is relevant given the government outlines concrete grounds and legitimate interests to justify the limited deposition of Mr. Davis. *See* 6 Dec. 2024 Order at 2 (noting the parties agreed "the standard for relevance . . . is lenient" and up to the Court's discretion); *see also* 8 July 2024 Status Conference Tr. at 21–22 (explaining the internal operations of government systems are highly confidentiality and should be protected), ECF No. 121; 5 Dec. 2024 Status Conference Tr. at 28–30 (discussing highly sensitive internal government systems), ECF No. 144.

Plaintiffs then argue "there is no competitive harm to the [g]overnment from Mr. Davis reviewing the SEC source code and other highly confidential information" considering all "patents-in-suit have expired, and there are no e-Numerate patent applications pending." Pls.' Resp. at 4. Per plaintiffs, Mr. Davis is the inventor of the patents-in-suit, "is uniquely qualified to review the [g]overnment's systems," and "resides in Bethesda, Maryland (which is only a few miles from the SEC's offices)." *See id.* at 1. "Having Mr. Davis review the source code is highly cost-effective for e-Numerate given his proximity to the SEC and his familiarity with the patented inventions." *See id.* Plaintiffs, however, miss the mark. Simply put, their arguments put the cart before horse, as this Motion involves only whether Mr. Davis should be deposed given the dearth of sufficient detail in his resume and engagement descriptions. Plaintiffs also fail to consider the lack of detail in Mr. Davis's resume as: (1) the government learned about Mr. Davis's consultancy role in this case in late January 2025; and (2) Mr. Davis acting as a

- 4 -

consultant on other government projects may pose a conflict with this case—both of which support the government's request to depose Mr. Davis on specific facts before allowing him access to confidential information. *Cf.* Gov't's Mot. for Leave, Ex. C (Davis Updated Resume); Gov't's Mot. for Leave, Ex. D (Davis Consulting Activities Since 2020). Further, the Court cannot decide whether there is "competitive harm" and assess Mr. Davis's level of expertise based on his two-page, high-level resume. *Cf.* Gov't's Mot. for Leave, Ex. C (Davis Updated Resume); Gov't's Mot. for Leave, Ex. D (Davis Consulting Activities Since 2020). Additionally, plaintiffs ignore 12 C.F.R. Part 366, which says nothing about "competitive harm," so it is unclear how "competitive harm" would be relevant to potential violations of conflict of interest and 12 C.F.R. Part 366, as argued by the government. *See* Gov't's Mot. for Leave at 3–4. Therefore, in exercising its discretion, the Court finds good cause exists for the government to depose Mr. Davis because his deposition does not cause any prejudice to plaintiffs, as the only possible prejudice is delay—but the parties have seven months to complete discovery. *See Schism*, 316 F.3d at 1300 ("A trial court 'has wide discretion in setting the limits of discovery.'" (quotation omitted)); *McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases."); *Florsheim*, 744 F.2d at 797 ("Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court."); RCFC 26 (b)(2)(A) (bestowing authority and discretion to the Court to "alter the limits" and "scope" of depositions). The Court also notes the deposition of Mr. Davis must be completed prior to the Court considering the government's Motion to preclude Mr. Davis's access to confidential information or amending the Protective Order because the deposition will shed light on whether he should in fact be excluded access from such information. The deposition will also not be prejudicial as Mr. Davis was already going to be deposed as to his role as a fact witness and allowing a deposition "for a limited purpose should not preclude a subsequent deposition on the merits because of the unique nature of the issues presented." *See* Gov't's Mot. at 5 (citing RCFC 30(a)(2)(A)(ii)) ("As a named inventor on the patents-in-suit, Mr. Davis is someone the Government intended to depose in the ordinary course of this litigation as to issues unrelated to his access to confidential material, such as the reduction to practice of any embodiment of the alleged inventions. However, given his desire to access confidential information without providing the Government with sufficient information as to his background, the Government respectfully requests that the Court order [p]laintiffs to produce Mr. Davis for a limited four-hour deposition . . . . This includes his past work on behalf of different government entities and his ability to use the information he seeks access . . . to develop other systems. The deposition for this limited purpose should not preclude a subsequent deposition on the merits because of the unique nature of the issues presented."). Even if there is a slight delay created by the deposition, the Court notes the delay should occur prior to the end of fact discovery and well before expert discovery. *See McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases.").

As discussed *supra*, pursuant to RCFC 30(a)(2), the Court **GRANTS-IN-PART** the government's Motion, ECF No. 154, to allow the government depose plaintiffs' proposed consultant, Mr. Davis, and **FINDS AS MOOT-IN-PART** the government's Motion, ECF No. 154, requesting an extension. *See* Gov't's Reply at 2 ("[T]he motion for an extension is moot at this point."). Specifically, plaintiffs **SHALL** "produce Mr. Davis for a limited four-hour deposition," including but not limited to "his past work on behalf of different government entities and his ability to use the information he seeks access to in order to develop other

- 5 -

systems." *See* Gov't's Mot. at 5. "The deposition for this limited purpose should not preclude a subsequent deposition on the merits because of the unique nature of the issues presented." *See id.* (citing RCFC 30(a)(2)(A)(ii)).

   **IT IS SO ORDERED.**

                                        s/ Ryan T. Holte
                                        RYAN T. HOLTE
                                        Judge