# In the United States Court of Federal Claims

No. 19-859C

(Filed: July 25, 2025)

|  |  |
|---|---|
| **E-NUMERATE SOLUTIONS, INC.,** *et al.*, | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) |

## ORDER

More than six years ago, on June 11, 2019, Plaintiffs, e-Numerate Solutions, Inc., *et al.*, ("e-Numerate") filed its complaint against the United States in this Court, alleging patent infringement pursuant to 35 U.S.C. § 271, *et seq.*, and 28 U.S.C. §§ 1491 and 1498(a). ECF No. 1. This case was first assigned to Judge Lydia Griggsby, ECF No. 2, later transferred to Judge Ryan Holte, ECF No. 12, and most recently transferred to the undersigned, on April 14, 2025, ECF No. 169. Pending before this Court are two discovery-related motions, ECF Nos. 157-58, and the enforcement of this Court's previously issued protective order, ECF No. 41.

### I.      The Protective Order

On December 21, 2020, the parties filed a joint motion for this Court to enter a proposed protective order. ECF No. 39. On December 23, 2020, the Court issued the proposed protective order. ECF No. 41. The protective order provides, *inter alia*, a detailed process for the recipient of "Confidential, Highly Confidential, or Source Code information" produced during discovery (hereinafter "Confidential Discovery Information") to further disclose such information to "an expert or consultant." ECF No. 41 at 8 (¶ 4(e)).[1]

---

[1] Citations to specific page numbers within electronic filings are to the ECF-stamped page numbers in the header of the filed PDF.

First, the expert or consultant must execute the "undertaking" form attached in an appendix, ECF No. 41 at 17–18, to the protective order. *See* ECF No. 41 at 8 (¶ 4(e)). The recipient of the Confidential Discovery Information must then serve the signed undertaking form on the producer of the information (and on all parties to the litigation), within ten business days. *Id.* Then, at least ten business days before the recipient discloses the Confidential Discovery Information to the expert or consultant who signed the undertaking form, the recipient must provide the producer with the expert's or consultant's curriculum vitae, along with other information related to their work. *Id.* The self-evident purpose of this latter step is to give the producer of the Confidential Discovery Information a sufficient basis to either approve the expert or consultant or to object.

If the producer "has good cause to object" to the disclosure of the Confidential Discovery Information to the expert or consultant, the producer has ten business days from when the expert or consultant was identified to serve the recipient with a written objection. *Id.* The parties have ten business days to resolve their dispute about the propriety of disclosing the Confidential Discovery Information at issue to the expert or consultant. If the parties are unable to resolve their dispute within that ten-day timeframe, the producer has five business days to file a motion with the Court to rule on the producer's objection. *Id.*

As part of the government's document production in response to written discovery, the government offered a source code inspection to e-Numerate. ECF No. 165 at 7. The source code falls within the category of "Confidential, Highly Confidential, or Source Code information" covered by ¶ 4(e) of the protective order, ECF No. 41. *See* ECF No. 158 at 4–5; ECF No. 165 at 7. On January 22, 2025, e-Numerate provided the government with the signed undertaking of Mr. Russel Davis to permit him to access to the source code (and perhaps other material) pursuant to the protective order. ECF No. 158 at 5. Mr. Davis is a named inventor of the patents-in-suit, co-founder of e-Numerate, and served as its Chief Technology Officer from 1998-2003. ECF No. 161 at 4. He currently leads software projects and some procurement efforts at Econometrica, Inc. ("Econometrica"). *Id.* at 5.

On January 27, 2025, the government notified e-Numerate that its disclosure of Mr. Davis — including the information that is supposed to be provided along with the undertaking form — failed to comply with the protective order's requirements. ECF No. 158 at 5. On January 31, 2025, e-Numerate provided more information to the government to answer its objection and to satisfy the protective order's requirements. *Id.* On February 5, 2025, the government informed e-Numerate that the government objects to the disclosure of information to Mr. Davis given the "possibility that Mr. Davis's participation in the case conflicts with conflict-of-interest provisions [contained in various of Econometrica's contracts] with the Government." ECF No. 158 at 6. On February 13, 2025, e-Numerate responded to the government's objection, asserting that

its objection "is inappropriate," and that "[t]here is nothing more to discuss."  ECF No. 158-1 at 2; 158 at 6.

## II.    The Subpoena and the Pending Related Motions

At some point in February of 2025,[2] the government issued a subpoena to Econometrica "seeking information relevant to Mr. Davis's request for clearance under the protective order" — *i.e.*, the executed undertaking form e-Numerate served on the government.  ECF No. 161 at 9.

On February 14, 2025, the government filed a motion for an extension of time within which to object to e-Numerate's disclosure of Confidential Discovery Information to Mr. Davis.  ECF No. 154.  The government also requested that this Court order Mr. Davis "to sit for a deposition with respect to the issues discussed herein one week before the Government is obligated to file its motion."  *Id.* at 1.  On February 27, 2025, e-Numerate filed its response in opposition to the government's motion.  ECF No. 156.  e-Numerate argued that the government's objection was untimely, and that the Court should deny the government's motion in its entirety.  ECF No. 156.

Before the Court ruled on the government's motion, third-party Econometrica[3] — Mr. Davis's current employer — filed a motion to quash the subpoena.  ECF No. 157.  That same day, the government filed a motion to preclude Mr. Davis "from gaining access to Confidential and Highly Confidential documents produced in this litigation."  ECF No. 158 at 4.  By doing so, the government formally lodged its objection, pursuant to the protective order, in this court.

On March 10, 2025, Judge Holte issued a ruling on the government's motion for an extension of time and to depose Mr. Davis.  ECF No. 160.  Since at that point, the

---

[2] The parties' briefs do not appear to disclose the exact date the subpoena was served on Econometrica.  The parties both attach as exhibits to their respective briefs a copy of the electronic subpoena, ECF Nos. 157-1, 161-2, which contains the date of February 12, 2025.  The government notes, however, that the government's process server personally served the hard-copy subpoena on Econometrica's agent and Chief Executive Officer, that the government also provided the electronic notice to e-Numerate, and that the exhibits are "a concatenation of different electronic documents (subpoena form, rider, and protective order attachment)."  ECF No. 161 at 9 n.2.

[3] The motion was filed by third-party Econometrica, Inc., and in a footnote asserts that e-Numerate joins in the motion.  ECF No. 157 at 1 n.1.  In the motion's signature block, however, the filing counsel refer to themselves as "Attorneys for Plaintiffs."  ECF No. 157 at 21.  The government argues that e-Numerate has no standing to oppose the subpoena, which was directed at Econometrica, Inc.  ECF No. 161 at 10.  Then, in the signature block of the reply brief, counsel correctly acknowledge that they are, in fact, "Attorneys for Third Party Econometrica."  ECF No. 166 at 1, 10.  The Court thus treats the filings in question as Econometrica's; Econometrica has standing to oppose the government's subpoena.

government had already filed its objection to Mr. Davis with the Court, Judge Holte found that the motion for extension of time was moot. *Id.* at 5. Judge Holte further explained that "[a]t first glance, the Court suspects the government's Motion was timely." *Id.* at 3. In any event, Judge Holte noted that the Court "need[] not consider the timeliness of the government's Motion given good cause exists," and given that "the Court has wide discretion in setting the limits of discovery." *Id.* (internal quotes and citations omitted).

As for the government's motion to depose Mr. Davis, Judge Holte found that "good cause exists for the government to depose Mr. Davis because his deposition does not cause any prejudice to plaintiffs, as the only possible prejudice is delay—but the parties have seven months to complete discovery." ECF No. 160 at 5. Judge Holte therefore granted the motion, in part, and ordered that e-Numerate "produce Mr. Davis for a limited four-hour deposition." *Id.* at 5. Judge Holte noted that "the deposition of Mr. Davis must be completed prior to the Court considering the government's [m]otion to preclude Mr. Davis's access to confidential information or amending the Protective Order because the deposition will shed light on whether he should in fact be excluded access from such information." *Id.* That deposition has not yet taken place, however, as the parties agreed to await the Court's decision on Econometrica's motion to quash the government's subpoena. ECF No. 167 at 2–3. That agreement made sense because the government's subpoena sought information that the government planned to use during its deposition of Mr. Davis (and to obtain additional evidence regarding whether Mr. Davis should be admitted to the protective order to review the Confidential Discovery Information).

On April 14, 2025, this case was transferred to the undersigned. ECF No. 169. On April 23, 2025, the parties filed a joint status report, explaining the posture of the case. ECF No. 172. On July 22, 2025, the Court held oral argument on the parties' motions. *See* ECF No. 175.

4

### III. The Court Grants Econometrica's Motion to Quash the Government's Subpoena

Rule 26(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." RCFC Rule 26(b)(1). "In general, parties may obtain discovery regarding any unprivileged matter relevant to a claim or defense of any party." *Zoltek Corp. v. United States*, 104 Fed. Cl. 647, 655 (2012). "To be relevant, discovery information need not be admissible at trial, it need only be reasonably calculated to lead to the discovery of admissible evidence. Discovery is not, however, unbounded. The court has broad discretion in determining the scope of discovery and in setting limits." *Id*. (citations omitted).

Here, the government seeks to subpoena a third-party, Econometrica, not for discovery related to the underlying merits of this case, but rather to determine simply whether Mr. Davis should be precluded from gaining access to Confidential Discovery Information e-Numerate seeks to provide to Mr. Davis. ECF No. 161 at 4 ("[T]he information sought is highly relevant to an important issue in this case – Mr. Davis' access to confidential, including highly confidential documents in this case."). In other words, the government does not seek discovery for any "claim or defense," RCFC 26(b)(1), but rather for its efforts to limit the access of e-Numerate's expert or consultant to information the government must provide to e-Numerate.

The discovery the government seeks from Econometrica regarding Mr. Davis is well beyond the scope of discovery mandated by this Court's Rules or warranted under the circumstances. If a party has a legitimate concern about allowing a particular individual access to certain information, the process for that is detailed in the protective order, as both parties acknowledged. ECF No. 41 at 8 (¶ 4(e)). Nothing in that protective order, however, suggests that a party may embark on a massive fishing expedition merely to determine if there are grounds to object to a consultant's or expert's access to the Confidential Discovery Information. If anything, the terms of the protective order — which the parties jointly proposed — contemplate that the party objecting to a consultant must base its objection on the information provided by the party proposing to provide the Confidential Discovery Information to the expert or consultant. Of course, it makes sense that the party objecting to an expert or consultant may also employ any publicly available information or information that the objecting party already has in its possession. But there is nothing in the protective order or this Court's Rules which would permit an entire schedule just so the Court can police its own protective order (and who should be admitted under its terms).

During oral argument, the Court asked counsel for the government if he could point to any case referenced in the government's various filings that allowed for discovery to further support an opposition to a consultant or expert receiving information

5

under the terms of a protective order. Counsel responded in the negative. The Court likewise has been unable to locate any such precedent. Accordingly, Econometrica's motion to quash the subpoena is **GRANTED**.

The Court now turns to the government's motion to preclude Mr. Davis from accessing the Confidential Discovery Information.

### IV. This Court Denies the Government's Motion to Preclude Mr. Davis from Being Admitted to the Protective Order

RCFC Rule 26(c)(1) allows the court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." RCFC Rule 26(c)(1). "The party resisting discovery must first establish that the information sought is a trade secret or other confidential information under the Rule and demonstrate that its disclosure might be harmful." *Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 238 (2013). Once the opposing party has made such a showing, "the burden then shifts to the party seeking discovery to establish that the disclosure of trade secrets or other confidential information is relevant and necessary to the action." *Id.* Ultimately, "[t]he court must balance the need for the trade secrets or other confidential information against the claim of injury resulting from disclosure." *Id.*

The government has not met its burden to demonstrate that disclosing the information at issue to Mr. Davis would be harmful to the government. Other than broad and conclusory assertions, the government has not explained the mechanics of how giving Mr. Davis access to the information e-Numerate seeks to share with him would cause the government concrete harm. This is not a case, for example, involving two competitors where one side wants to provide its opponent's trade secrets or highly sensitive, confidential commercial information to an expert or consultant who regularly competes against the owner of the information who produced it during discovery. Nevertheless, because Judge Holte has already granted the government's motion to depose Mr. Davis, ECF No. 160, this Court will permit that deposition to go forward and will hold off on rendering a final decision as to whether Mr. Davis should be precluded from accessing the Confidential Discovery Information. The government's pending motion is thus **DENIED** *without prejudice*.

After the government completes Mr. Davis's deposition, the government may refile any objection to Mr. Davis's accessing the Confidential Discovery Information at issue. If the government chooses to do so, the government shall succinctly explain what the associated risks are to Mr. Davis accessing the information, including, specifically, how his access may tangibly harm the government. This Court will not be persuaded by vague allegations and conclusory statements; the government must meet its burden to

demonstrate not only the injury to the government that such disclosure risks, but also that the risks of such disclosure outweigh e-Numerate's needs in this case. *Hitkansut LLC*, 111 Fed. Cl. at 238 ("The court must balance the need for the trade secrets or other confidential information against the claim of injury resulting from disclosure."). The government's objection to Mr. Davis — should it renew its objection — shall not exceed ten (10) pages, double-spaced, 12 pt. Times New Roman (or similar) font. The government shall file any such objection within 14 days of the completed deposition. In the event the government files such an objection, e-Numerate shall file its response to the objection — with the same page and text limitations — within 14 days of the government's objection.

Finally, all of the previous scheduling orders are **VACATED.** Fact discovery shall close on **March 2, 2026**. On or before **March 9, 2026**, the parties shall file a joint status report in which they propose a schedule for (1) the completion of expert discovery; and (2) further proceedings to finally resolve this case. Further extensions of time are unlikely to be granted absent extraordinary and unanticipated circumstances.

**IT IS SO ORDERED**.

s/Matthew H. Solomson  
Matthew H. Solomson  
Chief Judge