# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| E-NUMERATE SOLUTIONS, INC. and E-NUMERATE, LLC, | |
| Plaintiffs, | No. 19-859 C |
| v. | Chief Judge Matthew H. Solomson |
| THE UNITED STATES, | |
| Defendant. | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS

Of Counsel:
ANDREW CURRAN
Department of Justice

BRETT A. SHUMATE
Assistant Attorney General

SCOTT BOLDEN
Director

SHAHAR HAREL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Email:      Shahar.Harel@USDOJ.gov
Telephone:  (202) 305-3075
Facsimile:  (202) 307-0345
*COUNSEL FOR THE UNITED STATES OF AMERICA*

September 18, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.      ARGUMENT ................................................................................................................ 2

      A.      DEFENDANT WAS DILIGENT IN SEARCHING FOR AND DISCOVERING THE XBRL 0.9 SPECIFICATION ................................................................................................... 2

            1.      Plaintiffs Fail to Establish That Their Own Successful Search Negates Defendant's Diligence ................................................................................. 3

            2.      Plaintiffs' Fail to Counter or Otherwise Rebut Defendant's Demonstrated Diligence ................................................................................................... 5

            3.      The Webpage Discovered by Plaintiffs Was Not Readily Findable Because it is Not Indexed for Google Search and is not Indexed by Title, Author, or Full Date on the xml.coverpages.org Website. .......................... 8

      B.      PLAINTIFFS WILL NOT BE PREJUDICED IF DEFENDANT IS PERMITTED TO AMEND ITS INVALIDITY CONTENTIONS ................................................................................ 12

            1.      Plaintiffs Assertion That They Will Be Unduly Prejudiced is Unfounded Because Plaintiffs Purport to Assert 30 Claims From Seven (7) Patents . 13

            2.      Plaintiffs Mischaracterize Defendant's Argument Regarding Plaintiffs Awareness of the XBRL 0.9 Specification ................................................ 14

II.     CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*ACME Worldwide Enters. v. United States*,
  No. 17-843, 2022 U.S. Claims LEXIS 2324.............................................................................. 6

*CANVS Corp. v. United States*,
  107 Fed. Cl. 100 (2012) ........................................................................................................... 5

*Google, Inc. v. Netlist, Inc.*,
  No. C 08-4144 SBA, 2010 U.S. Dist. LEXIS 144392 (N.D. Cal. May 3, 2010) ....................... 5

*Hitkansut LLC v. United States*,
  127 Fed. Cl. 101 (2016) ......................................................................................................... 14

*Ilife Techs., Inc. v. Nintendo of Am., Inc.*,
  No. 3:13-cv-4987-M, 2017 U.S. Dist. LEXIS 87769 (N.D. Tex. May 30, 2017) ................... 15

*Intex Rec. Corp. v. Bestway USA Inc.*,
  No. LA CV16-3300 JAK (Ex), 2022 U.S. Dist. LEXIS 235733 (Aug. 4, 2022) ...................... 4

*Morphotrust United States, LLC v. United States*,
  132 Fed. Cl. 419, 421 (2017) ................................................................................................. 13

*Nike, Inc. v. Adidas Am., Inc.*,
  479 F. Supp. 2d 664 (E.D. Tex. 2017) .............................................................................. 15, 16

*Return Mail, Inc. v. United States*,
  152 Fed. Cl. 455, 459 (2021) ................................................................................................. 13

Defendant United States ("Defendant" or "the Government") hereby replies to Plaintiffs' Brief in Opposition to Defendant's Motion for Leave to Amend its Final Invalidity Contentions ("Plaintiffs' Opposition"). *See* Dkt. No. 185 ("Opp'n"). Defendant filed its Motion for Leave to Amend its Final Invalidity Contentions ("Motion") on August 28, 2025. *See* Dkt. No. 181 ("Motion"). In its Motion, the Government established that: (1) the Extensible Business Reporting Language ("XBRL") 0.9 Specification is highly relevant to the validity of the asserted patents;[1] (2) Defendant was diligent in discovering the basis—the XBRL 0.9 Specification—for the proposed amendment; (3) Defendant was diligent in seeking amendment of its final invalidity contentions once the basis for the amendment was discovered;[2] and (4) that e-Numerate Solutions, Inc. and e-Numerate, LLC (collectively, "e-Numerate" or "Plaintiffs") will not be prejudiced by Defendant's proposed amendments. Therefore, the Court should find that Defendant has shown good cause to amend its invalidity contentions and grant Defendant's Motion for leave to amend its invalidity contentions.

In their Opposition, Plaintiffs fail to overcome the Government's arguments in support of a finding of good cause for to leave to amend its final invalidity contentions. Plaintiffs' assertion that the Defendant was not diligent in locating the XBRL 0.9 Specification because Plaintiffs were able to locate a copy of the reference from the xml.coverpages.org website is unpersuasive.

---

[1] Plaintiffs in their Opposition did not address or attempt to rebut this assertion. *See* ECF No. 185 at 10 ("e-Numerate does not concede that the Government's description of the 0.9 specification's disclosure is correct, nor does e-Numerate concede that the 0.9 specification is material to the patentability of the pending claims. That inquiry is not relevant to the pending motion . . . ."). Therefore, Defendant treats this assertion as uncontested by the Plaintiffs and does not address it further in this Reply.

[2] Plaintiffs' Opposition does not address this prong of the diligence analysis. Therefore, Defendant treats this prong of the diligence analysis as uncontested by the Plaintiffs and does not address it further in this Reply.

*See* ECF No. 185 at 9–10.  First, Plaintiffs cite to no legal authority to support their argument that their ability to locate a different version of the 0.9 Specification somehow negates Defendant's diligence in its search for the 0.9 specification, which included web and Wayback Machine searches for the 0.9 Specification, interviews with the authors of the 0.9 Specification, and an interview with the CEO of XBRL International.  Second, the webpage cited by Plaintiffs that hosts the version of the 0.9 Specification cited in their opposition is not indexed for web-wide keyword search and is not indexed by title, full date, or author on the xml.coverpages.org website.  Further, Plaintiffs' argument that they will be prejudiced by inclusion of the proposed amended contentions because they reduced their asserted claims based on Defendant's Final Invalidity Contentions rings hollow, because Plaintiffs purport to assert 30 claims[3] across seven (7) patents.  Accordingly, pursuant to Rule 16(b)(4) of the Rules of the Court of Federal Claims ("RCFC"), the Court should find that Defendant has shown good cause to amend its invalidity contentions and grant Defendant's Motion for leave to amend its invalidity contentions.

I.      ARGUMENT

   A.  **DEFENDANT WAS DILIGENT IN SEARCHING FOR AND DISCOVERING THE XBRL 0.9 SPECIFICATION**

The Government has established its diligence in searching for and discovering the XBRL 0.9 Specification, which included: (1) a search of the websites of the  relevant standard maintaining entity, XBRL International, Inc. at xbrl.org, including through the Wayback Machine; (2) speaking with the two named authors of the XBRL 1.0 Specification who did not possess and could not locate a copy of any of the pre-1.0 specifications; and (3) speaking with

---

[3] The parties dispute whether Plaintiffs are presently asserting 29 or 30 claims.  *See* ECF No. 172 at 6-8. Defendant's arguments relating to lack of prejudice apply irrespective of how this tangential dispute is ultimately resolved.

the head of XBRL International, Inc.,[4] John Turner, who was also not aware of any pre-1.0 specification drafts in the corporation's possession or records.  *See* ECF No. 181 at 13–16. Defendant supplemented this diligent investigation by further identifying and searching third-party websites relevant to the industry that could contain useful secondary information or links to other potentially useful websites including through the Wayback Machine.  *Id.*  In May 2025, Defendant learned that the Organization for the Advancement of Structured Information Standards' (OASIS) website at oasis-open.org previously hosted an earlier version of the XBRL specification, and Defendant was able to locate a copy of the April 4, 2000 XBRL 0.9 Specification, via the Wayback Machine.  *Id.* at 15.

Plaintiffs' argument that Defendant was not diligent in discovering the 0.9 Specification because Plaintiffs were able to locate the XBRL 0.9 Specification at the URL "https://xml.coverpages.org/XBRL-00-04-04.html" is meritless and unpersuasive, because: (1) Plaintiffs fail to cite to any authority that supports their argument; (2) the webpage cited by Plaintiffs is not indexed for Google keyword search and is not indexed by title, full date, or author on the xml.coverpages.org website; and (3) Plaintiffs were aided in their subsequent search by the specification Defendant had already located.

### 1. Plaintiffs Fail to Establish That Their Own Successful Search Negates Defendant's Diligence

Plaintiffs argue that "[i]f [they] could readily find [the XBRL 0.9 Specification], the Government could have as well . . . [and] the Government's failure to find such readily available

---

[4] XBRL International a not-for-profit, member-supported global consortium whose primary purpose is the development of specifications to support the collection, sharing and use of structured data for data reporting and analysis. The XBRL 2.1 Specification (current specification version) is hosted on the XBRL International website. See https://www.xbrl.org/the-standard/.

information is inexcusable, particularly where both of its authors are **current** Government employees."[5]  ECF No. 185 at 9 (emphasis in original).  To support these arguments, that (1) if Plaintiffs could readily find the 0.9 Specification, the Government could have as well, and (2) that the Government's failure to find the 0.9 Specification is particularly inexcusable when both of its authors are current[6] Government employees, Plaintiffs rely on *Intex Rec. Corp. v. Bestway USA Inc.*, No. LA CV16-3300 JAK (Ex), 2022 U.S. Dist. LEXIS 235733 (Aug. 4, 2022). Specifically, Plaintiffs assert that the *Intex* court found a search "not diligent," and rejected the "excuse that document was difficult to find and in [a] foreign language."  ECF No. 185 at 9–10 (citing *Intex Rec. Corp.*, 2022 U.S. Dist. LEXIS 235733, at *15).[7]

*Intex* is readily distinguishable on its facts.  The *Intex* decision relates to a motion to amend invalidity contentions filed by a defendant, and the *Intex* court references a previous motion filed by plaintiffs in that action to amend its infringement contentions to add products sold by defendants.[8]  *Intex Rec. Corp.*, 2022 U.S. Dist. LEXIS 235733, at *3–*4.  There, the court found that the defendant was not diligent in discovering relevant prior art six years into litigation where the only barrier to earlier discovery of that prior art was translation from a

---

[5] Plaintiffs incorrectly state that David vun Kannon, a co-author of the XBRL 0.9 Specification, is a current employee of the U.S. Department of the Treasury.  Plaintiffs were notified of David vun Kannon's retirement from government employment via Defendant's Third Supplemental Rule 26(A)(1) Disclosure, served June 18, 2025.

[6] *See supra* note 4.

[7] The page of the *Intex* decision cited by Plaintiffs (page *15) addresses prejudice, not diligence, so Defendant was forced to look elsewhere in the decision for support for Plaintiffs' argument.

[8] It is unclear given the incorrect citation, *see supra* note 6, whether Plaintiffs attempt to support their argument by referencing the previous decision that is referenced in the opinion they cite.  The merits of the underlying previously decided motion for leave are not addressed in the cited opinion.  *See Intex Rec. Corp.*, 2022 U.S. Dist. LEXIS 235733, at *3–*4.

4

foreign language. *See Id.* at *10. Nonetheless, the Court ultimately allowed the defendant to amend its invalidity contentions given the lack of prejudice. *See Id.* at *18. Here, unlike in *Intex*, the reference at issue is not a readily findable or a known reference that merely required translation, but instead is a reference that is known to be findable at three web addresses on the internet, each being archival and/or unindexed, and requiring manual or URL-specific search of disordered websites. *See infra* Section I.A.3; *see also* ECF No. 181-5 (providing the URL for the OASIS archived webpage); ECF No. 185 at 4 (providing the URLs for the xml.coverpages.org archive and active webpages).

Plaintiffs' arguments—that if they could readily find a reference the Government could have as well, and that the Government's failure to find available information is "particularly" inexcusable when both of its authors are Government employees—are plainly unsupported by any legal authority cited in Plaintiffs' Opposition. For the forgoing reasons, the Court should find that Defendant was diligent in discovering the XBRL 0.9 Specification and grant its Motion for leave to amend its invalidity contentions.

## 2. Plaintiffs' Fail to Counter or Otherwise Rebut Defendant's Demonstrated Diligence

Plaintiffs further argue that "Defendant's failure to locate the publicly available 0.9 XBRL Specification after six years of litigation demonstrates that Defendant was not diligent . . . [t]he critical issue [being] not when Defendant ultimately discovered the 0.9 XBRL Specification, but rather whether Defendant *could have* discovered it earlier had it acted with diligence. *See* ECF No. 185 at *9 (emphasis in original) (citing *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 U.S. Dist. LEXIS 144392, at *7 (N.D. Cal. May 3, 2010); *CANVS Corp. v. United States*, 107 Fed. Cl. 100, 107 (2012)). Plaintiffs further argue that the Government failed to satisfy its burden to establish diligence because "the Government does not clearly

articulate *how* and *where* the specification was allegedly found (and *who* found it)." See ECF No. 185 at *10 (emphasis in original) (citing *ACME Worldwide Enters. v. United States*, No. 17-843, 2022 U.S. Claims LEXIS 2324, at *10–*11 (Fed. Cl. Oct. 11, 2022)).

Plaintiffs' argument that Defendant's delay in finding the 0.9 Specification demonstrates a lack of diligence, when Defendant "***could have***" discovered it earlier had it acted with diligence," fails to address steps Defendant took to locate the 0.9 Specification. Further, this impliedly assumes that diligence cannot exist when a reference that is accessible via the internet but is not readily searchable or findable is not immediately discovered by the searching party. Defendant's Motion outlined its diligent search for the 0.9 Specification, which dated at least as far back to 2023 and included a search of the website of the relevant standard maintaining entity, XBRL International, Inc. at xbrl.org, including through the Wayback Machine, speaking with the two named authors of the XBRL 1.0 Specification, and speaking with the head of XBRL International, Inc., John Turner. *See* ECF No. 181 at 13–16. Defendant supplemented this effort by finding third-party websites that could contain useful secondary information or links to other websites, such as xml.coverpages.org, including through the Wayback Machine. *Id.* In May 2025, Defendant learned that the Organization for the Advancement of Structured Information Standards' (OASIS) website at oasis-open.org previously hosted an earlier version of the XBRL specification, and Defendant was able to locate a copy of the April 4, 2000 XBRL 0.9 Specification, via the Wayback Machine. *Id.* at 15. *See* ECF No. 181 at 14–16, 25–26; ECF. No. 181-10.

Further, the cases cited by Plaintiff to support this argument are easily distinguished from the instant case. In *CANVS*, the party seeking amendment failed to timely file initial preliminary contentions, and the Court considered the fact that the movant "provide[d] no explanation for

why it was unable to discover all the relevant public information it needed" prior to the deadline for preliminary contentions, finding no good cause. *CANVS*, 107 Fed. Cl. at 107. Here, Defendant timely served initial invalidity contentions based on the XBRL 1.0 Specification and detailed its efforts from 2023 to locate the prior 0.9 Specification reference, *see* ECF No. 181-10 (Hamscher Declaration), and addresses how and in what ways the copy of the reference cited by Plaintiffs in their Opposition was not readily findable. *See infra* Section I.A.3. *Google, Inc. v. Netlist, Inc.* is distinguishable from the instant case in several significant ways, including that that case involved information gathered during a Rule 30(b)(6) deposition, and that the movant chose to conduct those depositions in the final month of fact discovery, the court finding that depositions and related discovery of new information could have happened earlier. Here, unlike in *CANVS*, and notwithstanding its demonstrated diligence, Defendant had no direct control over how or when the 0.9 Specification was discovered, unlike the movants in *CANVS*, who controlled and managed their own discovery requests.

      Regarding Plaintiffs assertion that Defendant failed to provide sufficient information about its discovery of the 0.9 Specification, including, "who," "how," and "most importantly, *where* it was located," *see* ECF No. 185 at 6, 10 (emphasis in original), Defendant specified in its motion that it located the XBRL 0.9 Specification through a Wayback Machine search of the website of the Organization for the Advancement of Structured Information Standards' (OASIS) at oasis-open.org. *See* ECF No. 185 at 6, 10 (citing ECF 181 at 15). Further, Exhibit E to Defendant's Motion, the screenshot of the XBRL 0.9 Specification located at an archived OASIS webpage, clearly identifies *where* it was found: https://web.archive.org/web/20010217121517

/http://www.oasis-open.org/cover/XBRL-00-04-04.html.[9] *See* ECF No. 181-5 (providing URL depicted at the bottom of every page of the document). Plaintiffs' assertion that Defendant is required to disclose "who" discovered the reference is not supported by any of the caselaw cited by Plaintiffs, *see* ECF No. 185 at 10, nonetheless it was discovered by an attorney working on this case.

Because Plaintiffs fail to counter or rebut Defendant's showing of diligence in discovering the XBRL 0.9 Specification, the Court should find that Defendant was diligent in discovering the 0.9 Specification and grant its Motion for leave to amend its invalidity contentions.

3. **The Webpage Discovered by Plaintiffs Was Not Readily Findable Because it is Not Indexed for Google Search and is not Indexed by Title, Author, or Full Date on the xml.coverpages.org Website.**

Throughout its Opposition, Plaintiffs refer to the 0.9 Specification as "readily available" or "readily locatable" because Plaintiffs "readily found the 0.9 XBRL specification on both the xml.coverpages.org and on the Wayback machine." ECF No. 185 at 6, 9. However, the webpage cited by Plaintiff—https://xml.coverpages.org/XBRL-00-04-04.html— is not indexed for web-wide keyword search and is not indexed by title, date, or author on the xml.coverpages.org website. Moreover, once Plaintiffs knew the URL where Defendant found the specification[10], they could have appended the same "XBRL-00-04-04.html" filename to the

---

[9] This URL indicates that it is Wayback Machine's snapshot of http://www.oasis-open.org/cover/XBRL-00-04-04.html as it appeared on February 17, 2001.

[10] https://web.archive.org/web/20010217121517 /http://www.oasis-open.org/cover/XBRL-00-04-04.html.

xml.coverpages.org to find that site's version of the specification. Stated differently, the bulk of the work in uncovering this specification was already performed by Defendant.

The webpage cited by Plaintiffs that contains the XBRL 0.9 Specification is not indexed such that it can be found via a search engine (Google) search of the xml.coverpages.org site when using keywords, titles, and author names. For example, searches terms and options[11] such as "xbrl 0.9 specification site:xml.coverpages.org," "Hamscher site:xml.coverpages.org," and "'Extensible Business Reporting Language (XBRL) Version 0.9 Specification' site:xml.coverpages.org" fail to locate the webpage cited by Plaintiffs. Ex. B at 2-4 (showing screen captures of aforementioned Google searches). Indeed, the xml.coverpages.org website explicitly states that "Google does not index all Cover Pages documents" and that the other previously available search facility is "broke[n]." Ex. A.

Further, the xml.coverpages.org website fails to identify the 0.9 Specification by title, does not list the publication in correct chronological order, uses an incomplete or incorrect publication date as a naming convention, and is not indexed by author. Although Plaintiffs fail to identify any page linking to the 0.9 Specification, Defendant did find one relevant page, https://xml.coverpages.org/xbrl.html. However, that page has a link for "XBRL Specifications" under "Principal References" at the very top of the page, but that links to the XBRL International, Inc.'s website at xbrl.org:

---

[11] One may limit a Google search to a specific domain by including "site:" followed by the relevant domain name in the search. Indeed, using the Advanced Search feature at the XML Coverpages, https://xml.coverpages.org/search/search.html, results in this type of search. *See* Ex. A.

> ⚲ xml.coverpages.org/xbrl.html
>
> 🅱 index.html  🔍 Bing  ⊙ CFC ECF  ⊙ CAFC ECF  ⊡ C  ⊙ wTA:  ⊙ CIVNet  🗎 R  ⊙ COFC ECF  d c  ⊙ welcome.html
>
> **Technology Reports**
>
> # Extensible Business Reporting Language (XBRL)
>
> [August 2005] On April 25, 2005, XBRL International published Extensible Business Reporting Language (XBRL) 2.1 with errata correc documents correctly; this Conformance Suite was approved as a Candidate Recommendation by the XBRL International Steering Com core language of XML elements and attributes used in XBRL instances as well as a language used to define new elements and taxono distribution process and end users who adopt it as a specification to enhance the creation, exchange, and comparison of business repo reports..." An informative XBRL Specification and Guidance Stack (SGS) 1.0 document provides an overview of the most important do
>
> The XBRL Specification models a creative implementation of W3C XLink: "Links between XML fragments occur in many forms in XBRL syntax definitions and their semantics, defined in linkbases. The semantics themselves are expressed in the networks of links that con "provides a set of standard XLink roles and arc roles that may appear in XBRL instances and linkbases. Broadening use of XBRL is lea structured information about their purpose, usage, and any intended impact on XBRL instance validation."
>
> [April 12, 2000] The American Institute of Certified Public Accountants (AICPA), joined by Reuters and thirty-some other organizations, Language (XBRL), formerly code-named XFRML, is an open specification which uses XML-based data tags to describe financial state Project Committee, it is helping to develop and launch XBRL (eXtensible Business Reporting Language). XBRL for Financial Statemen the Internet. The AICPA has been working with several companies for more than a year to develop the XBRL framework. The Institute necessary to secure adoption of XBRL by participants in the financial information supply chain. The AICPA also represents some of the the world. XBRL for Financial Statements, developed by the Committee as the first product in a future family of XBRL-based products, includes public and private companies, the accounting profession, data aggregators, the investment community and all other users of f once, allowing that same information to be rendered in any form, such as a printed financial statement, an HTML document for the com type of financial disclosure on the Internet. Investors and users of the Internet need accurate and reliable financial information that can leverages efficiencies of Internet as today's primary source of financial information by making Web browser searches more accurate ar
>
> [April 28, 2003]   Working Draft for Extensible Business Reporting Language (XBRL) Version 2.1.   XBRL International has announced to prepare business reports that can subsequently be presented in a variety of ways. It supports software vendors, programmers, and but is not limited to, financial statements, financial information, non-financial information, general ledger transactions, and regulatory fili schemas, greater detail about pre-existing XBRL 2.0 features, and detailed explanations of the new features. Domain experts and appl supporting documentation. Calculation links have been made more powerful through a mechanism for expressing relationships betwee
>
> [May 11, 2000] The XBRL Web site now hosts several demonstrations which reveal the capabilities of XBRL, and a recent announcem Commercial and Industrial Companies [US GAAP]. The Taxonomy Viewer "is a Microsoft Access database that allows a user to more e site to provide test data. "For example, if you wanted to prepare extraction and comparison prototypes to test the XBRL concept, you c Plains Financial Statement demo is a complete set of financial statements prepared using XBRL; it does not require XML parser on the
>
> **Principal References**
>
> - XBRL Home Page
> - XBRL FAQ document
> - An Introduction to XBRL
> - XBRL Technical Index
> - XBRL Specifications
> - XBRL Spec Recommendations
> - Financial Reporting Taxonomies
> - Index of Financial Reporting Taxonomies
> - General Ledger Taxonomy
> - XBRL Technical Guidance

That page also lists publications in reverse chronological order for the date range April 12, 2000 (bottom of page) to August 24, 2005 (top of page). The hyperlink that links to https://xml.coverpages.org/XBRL-00-04-04.html is placed in between entries on the website

10

dated February 25, **2002** and February 21, **2002**,[12] the hyperlink does not include the author name, title of the specification, or the full publication date including year, and is merely identified as "cache, HTML 04-04 version" without reference to the 2000 year:

[screenshot of bulleted list from xml.coverpages.org/xbrl.html showing entries dated February 12, 2002; February 25, 2002 ("Using XBRL For Data Reporting."); Third International XBRL Conference in Sydney; Taxonomy page; US GAAP Taxonomy for Commercial and Industrial companies; XBRL Express web site; Categorized industries with resources in the XBRL repository; XBRL Australia; XBRL Tools; XBRL Technical Specification [cache version 04-06, HTML, PDF 0406], earlier draft: [cache, HTML 04-04 version, PDF 04-04]; February 21, 2002 "General Electric Implements enumerate Software To Streamline Financial Reporting."]

*See* https://xml.coverpages.org/xbrl.html.  Therefore, even a diligent review of this page seeking the April 4, 2000 version of the specification may overlook this link whereas Plaintiffs' search specifically targeted references to "04-04" based on what Defendant previously uncovered.

The fact that the webpage cited by Plaintiffs—https://xml.coverpages.org/XBRL-00-04-04.html—is not indexed for web-wide keyword search and is not indexed by title, date, or author on the xml.coverpages.org website suggests that the version of the 0.9 Specification at that web address is not "readily available" or "readily locatable" as Plaintiffs assert.  Plaintiffs fail to cite any legal authority to support their implied argument that the availability or findability of a reference is determined by whether any party or individual is able to locate to the reference.

---

[12] The 0.9 Specification was published on April 4, 2000.  *See* ECF No. 181-5 (XBRL 0.9 Specification).

For the foregoing reasons, the Court should find that the version of the XBRL 0.9 Specification located by Plaintiffs at https://xml.coverpages.org/XBRL-00-04-04.html—after they knew of the existence of the version of the XBRL 0.9 Specification located by Defendant at http://www.oasis-open.org/cover/XBRL-00-04-04.html (February 17, 2001 archive)—is not readily accessible or findable in the context of the good cause diligence analysis because it is not indexed for keyword search and is not indexed by title, date, or author on the xml.coverpages,org website, and find good cause for granting Defendant's Motion for leave to amend.

B. **PLAINTIFFS WILL NOT BE PREJUDICED IF DEFENDANT IS PERMITTED TO AMEND ITS INVALIDITY CONTENTIONS**

In its Motion, Defendant established that Plaintiffs will not be prejudiced by Defendant's proposed amendments because: (1) fact discovery between the parties is open for six more months; (2) expert discovery is not yet open and expert discovery deadlines have yet to be set by the Court; and (3) Plaintiffs are not genuinely surprised or harmed by the Government's amendment to include the XBRL 0.9 Specification as an invalidity reference in light of Defendant's previous disclosure of the XBRL 1.0 Specification and related invalidity position(s) and Plaintiffs' early involvement with the XBRL consortium near the time that the 0.9 Specification was published.  *See* ECF No. 181 at 30–33.

Plaintiffs' argument that they will be unduly prejudiced by Defendant's proposed amendment because "[they] reduced the number of asserted claims in light of, and in reliance upon, Defendant's final invalidity contentions" rings hollow, because Plaintiffs draw exaggerated comparisons with the caselaw they cite to support their argument.  Further, Plaintiffs mischaracterize Defendant's arguments with regard to Plaintiffs' awareness of the XBRL 0.9 Specification in relation to the prejudice analysis.

12

### 1. Plaintiffs Assertion That They Will Be Unduly Prejudiced is Unfounded Because Plaintiffs Purport to Assert 30 Claims From Seven (7) Patents

Plaintiffs argue that the "prejudice inquiry is fact-specific and the Court may consider multiple factors including where, as here, the parties have staked out positions by, for example, selecting asserted claims." *See* ECF No. 185 at 8 (citing *Return Mail, Inc. v. United States*, 152 Fed. Cl. 455, 459 (2021); *Morphotrust United States, LLC v. United States*, 132 Fed. Cl. 419, 421 (2017)). Plaintiffs argue that they would be unduly prejudiced if Defendant was permitted to amend its invalidity contentions because "[they] reduced the number of asserted claims in light of, and in reliance upon, Defendant's final invalidity contentions." *See* ECF No. 185 at 11.

In *Return Mail*, a case cited by Plaintiffs to support their argument, the Court ultimately found that the government established its diligence and that the plaintiff would not be prejudiced by the government's proposed contention amendments. *See Return Mail, Inc. v. United States*, 152 Fed. Cl. 455, 459–60 (2021). In that case and with respect the motion to amend, plaintiff ***only asserted two claims*** in its infringement action against the government when the government moved to amend its invalidity contentions, and the Court still found that plaintiff would not be prejudiced by the government's proposed amendment. *Return Mail, Inc. v. United States*, No. 1:11-cv-00130 (Fed. Cl. Nov. 12, 2020) (ECF No. 136 at 11) ("Return Mail, Inc.'s Opposition to Defendant's Motion to Amend Its Invalidity Contentions").

Here, Plaintiffs currently purport to assert 30 claims from seven (7) patents. *See* ECF No. 185-1 (Opposition Exhibit A). Plaintiffs' argument that it would be unduly prejudiced because "the parties have staked out positions by . . . selecting asserted claims," when Plaintiffs still assert 30 claims, does not make sense in light of *Return Mail*, where the Court found good cause and a lack of prejudice when the nonmoving party had far more restrictively "staked out [its] positions" by only asserting two claims. Plaintiffs further fail to identify any specific claim,

13

either presently asserted or asserted before Plaintiffs' January 2025 reduction in asserted claims, that would be affected or implicated by Defendant's proposed amendments.

Plaintiffs cite to no authority that supports their position that they would be unduly prejudiced if Defendant were granted leave to amended its contentions to assert one additional invalidity reference and add two claim charts while Plaintiffs purport to maintain 30 asserted claims, *see* ECF No. 181-6; ECF No. 185-1, especially where fact discovery between the parties is open for six more months, expert discovery is not yet open and expert discovery deadlines have yet to be set by the Court, and Plaintiffs are not genuinely surprised or harmed by the Government's amendment to include the XBRL 0.9 Specification as an invalidity reference in light of Defendant's previous disclosure of the XBRL 1.0 Specification and related invalidity position(s) and Plaintiffs' early involvement with the XBRL consortium near the time that the 0.9 Specification was published. *See* ECF No. 181 at 30–33.

For the foregoing reasons, the Court should find that Plaintiffs will not be prejudiced by Defendant's proposed amendments to its invalidity contentions and grant Defendant's Motion.

### 2. Plaintiffs Mischaracterize Defendant's Argument Regarding Plaintiffs Awareness of the XBRL 0.9 Specification

In their Opposition, Plaintiffs state that "[t]he Government asserts that e-Numerate's awareness of the 1.0 XBRL Specification somehow justifies the amendment to assert the earlier 0.9 XBRL specification." *See* ECF No. 185 at 11. That mischaracterizes Defendant's argument. In its Motion, Defendant established that one factor in the prejudice analysis recognized by this Court is whether a nonmoving party is "genuinely surprised or harmed" by a proposed amendment. *Return Mail*, 152 Fed. Cl. at 459 (citing *MorphoTrust*, 132 Fed. Cl. at 421; *Hitkansut LLC v. United States*, 127 Fed. Cl. 101, 109 (2016)). Defendant argued that this "factor that weighs against a finding of prejudice" in this case because: (1) Defendant produced

14

and charted the 1.0 Specification to Plaintiffs early in discovery; (2) Plaintiffs previously disclosed the 1.0 Specification to the USPTO and discussed it with the patent examiner during prosecution; (3) the 1.0 Specification expressly identifies the April 4, 2000 Specification (0.9) as a previously released version; and (4) Plaintiffs participated in the XBRL consortium within months of when the consortium published both the 0.9 and 1.0 Specifications. ECF No. 181 at 32–33. Plaintiffs do not address or contest any of these directly relevant facts in their Opposition. *See generally* ECF No. 185 at 7-8.

Further, the cases cited by Plaintiffs to support their argument that "Courts have denied amendment in similar situations based on prejudice," *Ilife Techs., Inc. v. Nintendo of Am., Inc.*, No. 3:13-cv-4987-M, 2017 U.S. Dist. LEXIS 87769 (N.D. Tex. May 30, 2017) and *Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664 (E.D. Tex. 2017), are easily distinguishable from this case or are incorrectly cited as addressing the prejudice prong of the good cause analysis. The movant in the *Ilife Techs.* case sought to amend its invalidity contentions three and a half months after the close of fact discovery and four months before trial. *Ilife Techs.*, 2017 U.S. Dist. LEXIS 87769, at *47  Here, fact discovery between the parties is open for six more months, expert discovery is not yet open, and expert discovery deadlines, let alone a schedule for dispositive motions or a trial date, have yet to be set by the Court.

In *Nike, Inc. v. Adidas Am., Inc.*, the court did not make a determination as to prejudice, but did opine that movant did not act diligently to amend its infringement contentions to include infringement allegations under the doctrine of equivalents where Nike made "brief statements in the July 2006 contentions" regarding the doctrine of equivalents, "followed by the October 2006 contentions in which there was no mention of the doctrine of equivalents," following by Nike's "January 2007 amended claim charts [which] are the first time Nike identifies which element of

15

each asserted claim is alleged to be present under the doctrine of equivalents in the accused instrumentality." *Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d at 670.  Here, Defendant moves to amend its contentions to add one invalidity reference and two claim charts and demonstrated its diligence in searching for the specific reference sought to be added.  Further, unlike the plaintiff in *Nike, Inc. v. Adidas Am., Inc.*, Defendant is not engaging in gamesmanship with its underlying infringement or invalidity theories.

For the foregoing reasons, the Court should find that Plaintiffs will not be prejudiced by Defendant's proposed amendment invalidity contentions and grant Defendant leave to amend.

## II.     CONCLUSION

For the reasons stated in Defendant's Motion and the foregoing Reply, it is respectfully requested that this Court find that Defendant has shown good cause to amend its invalidity contentions and grant Defendant's Motion for leave to amend its invalidity contentions.

                  Respectfully submitted,

                  BRETT A. SHUMATE
                  Assistant Attorney General

                  SCOTT BOLDEN
                  Director

                  *s/ Shahar Harel*
                  SHAHAR HAREL
                  Trial Attorney
Of Counsel:                Commercial Litigation Branch
ANDREW CURRAN       Civil Division
Department of Justice      Department of Justice
                  Washington, DC 20530
                  Email:        Shahar.Harel@USDOJ.gov
                  Telephone:  (202) 305-3075
                  Facsimile:   (202) 307-0345
                  *COUNSEL FOR THE UNITED STATES OF AMERICA*

September 18, 2025