# Exhibit C



**U.S. Department of Justice**

Civil Division

SH
154-19-859

Telephone:    (202) 305-3075
Facsimile:    (202) 307-0345

*Washington, DC 20530*

April 9, 2026

VIA E-MAIL

Sean T. O'Kelly
Gerard M. O'Rourke
O'KELLY & O'ROURKE, LLC
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
sokelly@okorlaw.com
gorourke@okorlaw.com

G. Andrew Gordon
ANDREW GORDON LAW FIRM PLLC
6518 Ryeworth Dr.
Frisco, TX 75035
andrew@agordonlawfirm.com

> Re:  e-Numerate Solutions, Inc. et al., v. United States,
>       Court of Federal Claims No. 1:19-cv-859

Dear Counsel,

I write to follow up on the meet and confer held on Wednesday, March 25, 2026, the various topics discussed on that call, and e-Numerate's Second Supplemental Final Infringement Contentions served on March 27, 2026.

First, in the meet and confer, the Government once again raised several issues relating to improper, wasteful, and/or unduly burdensome deposition topics.  As we had indicated in our correspondence of March 5, Topic No. 8 of e-Numerate's Notice as to the SEC, which recites "General awareness of Plaintiff's IP, including when the U.S. Government became aware of such technology" is not relevant to any issue in this case and Topic No. 10, which recites "Improvement over prior systems including, but not limited to, the following: A. Any comparisons to prior-existing systems, and measurement of improvement by way of time-saved, or other benefits," does not provide notice as to the improvement of what and with respect to which prior systems.  You were unprepared to substantively discuss either of these topics and only stated that you would need to discuss those topics with your client.  Accordingly, before the

Government moves for a protective order with respect to these topics, let us know if e-Numerate agrees to withdraw these topics.

Further, with respect to e-Numerate's Topic No. 6, which generally relates to non-infringing alternatives, you suggested that the parties work on compromise language for this topic and Defendant's corresponding Topic No. 74. We are interested in what you may propose, however, we believe that this topic should be cabined to exclude hypothetical non-infringing alternatives as that it is the proper focus of expert discovery.   Please confirm your agreement on that point.

Additionally, in response to our concern regarding unduly burdensome depositions covering all the source code that the Government has made available for review and the Government's previous request to cover technical topics at a reasonable and high level, you stated that e-Numerate may agree to limit the questioning to the specific source code printouts it has requested[1] but would follow-up after conferring with your technical experts.  Please confirm that e-Numerate and its technical consultants have completed their source code review and that you will limit questions to the source code printouts.

Moreover, we also discussed e-Numerate's response to the Government's Request for Production No. 40 which called for, *inter alia*, "the terms of any litigation funding agreement(s) and modifications and amendments thereto."  You indicated that you may want to supplement e-Numerate's response, that there was no third-party funder, and that you would not produce your representation agreement.  As we previously explained, Section 1498(a) expressly limits recovery of "reasonable costs" to those incurred by "the owner." 28 U.S.C. § 1498(a). In other words, Section 1498(a) authorizes an award of reasonable costs only to the extent that the patent owner has actually paid (or owes) that amount for litigating the action.  Unless e-Numerate agrees to forgo these reasonable costs, the Government is entitled to know the costs incurred by the owner and how they are determined, irrespective of whether there is a third-party funder or if your firm is representing e-Numerate on a contingency capacity or "hybrid-contingency" basis. Accordingly, please confirm that you will be producing such a representation agreement or the Government will be forced to move for its production.

Second, we write regarding e-Numerate's latest infringement contentions.  As you know, these contentions span thousands of pages over 140 different files[2] and now purport to assert thirty-one (31) claims against the Government[3] whereas e-Numerate previously asserted four claims against

---

[1] . To date, the Government has produced over 320 pages for SEC and over 280 pages for FERC and FFIEC/FDIC.  e-Numerate has indicated it will seek additional printouts while the Court's Protective Order refers to more than 400 pages as excessive. *See* ECF 41 at 11.

[2] e-Numerate did not return the Government's previous courtesy of providing redlines in such instances to help the other party focus its review.

[3] The contentions include 31 different claims charts, some of which are devoid of substantive content, as to SEC, FDIC and FERC, but appear to still only assert two claims against Treasury.

S. Harel to G. O'Rourke
April 9, 2026

SEC and FFIEC/FDIC and two claims against USDOT/OMB and FERC/DOE.  e-Numerate's reliance on the Court's prior order to justify this abrupt and dramatic change in its contention is improper as the Court specifically required that "e-Numerate shall file an appropriate motion."[4] ECF 209 at 10.  e-Numerate never filed such a motion and it is unlikely that it would ever be granted for at least the following reasons:

- e-Numerate did not swap in a previously asserted claim because of the Government's introduction of the 0.9 XBRL Specification; instead it increased the number of asserted claims beyond the thirty (30) limit that Judge Holte ordered more than 17 months ago. ECF 141 at 3 ("… plaintiffs WILL REDUCE the number of asserted claims to 30 on or before 31 January 2025.") (emphasis in original).

- e-Numerate dramatically changed the nature of its case against different Government agencies by asserting claims and patents it never previously asserted against the Government.  For example, e-Numerate never asserted the '355 Patent against the Government. The Court has already determined that a claim of this patent "is directed to the abstract idea of applying a macro to tagged numbers and reporting the results on a computer." ECF 27 at 26.   The Government maintains that all asserted claims of this patent are directed to an abstract idea involving macros.  If the Court were to accept these new contentions, the Government will be unduly prejudiced as it will need to investigate these new theories regarding macros, including potential discussions with third-party contractors, prepare defenses to these new theories, identify non-infringing alternatives and potentially prepare 30(b)(6) witnesses for this patent.

- e-Numerate now seeks to assert the '384 patent; '748 patent, claims 11 and 19 and asserted dependent claims; and '337 patent against SEC, FDIC and FERC where it previously did not do so. e-Numerate has referred to the relevant functionality of these patents as "Change Once, Change Everywhere."  *See* 3.26.2026 Numerate's Second Supplemental Final Infringement Contentions Cover Pleading at 12.  If the Court were to accept these new contentions, the Government will be unduly prejudiced for these new claims for corresponding reasons as with the '355 Patent discussed above.

---

[4] The Court also did not open the door to dramatic changes to e-Numerate's contentions when it granted-in-part the Government's cross-motion to strike e-Numerate's infringement contentions.  The Court found the source code citations in e-Numerate's contentions "unacceptable," and ordered e-Numerate to amend its contentions to correct the deficient source code citations identified by the Government.  ECF 209 at 28; *see also* Correspondence dated January 22, 2026, S. Harel Letter to G. O'Rourke.  Any reliance by e-Numerate on the Court's order to justify any amendments to its contentions beyond those specifically ordered by the Court is misplaced.

3

S. Harel to G. O'Rourke<br>April 9, 2026

Therefore, we understand your latest infringement contentions as those you *seek* to assert and note your "willing[ness] to discuss a suitable stipulation with the Government to avoid unnecessary motion practice." *Id*. at 9. Before we meet and confer, please explain how e-Numerate can justify this radical change in the case at this stage in the litigation and how e-Numerate may lessen the Government's burden in responding to these contentions.

Finally, in terms of e-Numerate's doctrine of equivalents theories which you previously refused to delineate on a limitation-by-limitation basis but only offered to fix them in your updated contentions, the Government maintains that "Database as a Markup Document DOE Theory" and the "CSV File as a Markup Document DOE Theory" are both improper invocations of the doctrine of equivalents as previously explained. *See Johnson & Johnston Assoc. v. R.E. Servs.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc) ("Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'") (citation omitted). Such theories are the basis of at least Topic Nos. 2, 3, and 4 of e-Numerate's Notice as to the SEC and Topic No. 2 of e-Numerate's Notice as to FFIEC/FDIC.[5] Accordingly, the Government will move for a protective order to limit these unduly burdensome depositions topics.

Please let us know if you would like to discuss the foregoing. However, in any case, provide your substantive response by no later than April 15.

Very truly yours,<br><br>/s/ Shahar Harel<br>SHAHAR HAREL<br>Trial Attorney<br>Commercial Litigation Branch

---

[5] The CSV File as a Markup Document DOE Theory is apparently the basis of Topic No. 1 of e-Numerate's Notice as to the OMB/Treasury Department however that topic specifically recites "XBRL compliant document" and there is no reference to their equivalents or to CSV files. e-Numerate has never reconciled this topic and any of its contentions.

4