# Exhibit D



O'Kelly & O'Rourke, LLC

**Gerard M. O'Rourke, Esq.**
**gorourke@okorlaw.com**
**Direct: (302) 778-4002**

April 15, 2026

**<u>VIA ELECTRONIC MAIL</u>**
Shahar Harel, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
shahar.harel@usdoj.gov

>    Re:    *e-Numerate Solutions, Inc. et al. v. United States - Fed. Cl. No. 19-859-MHS*

Dear Shahar,

We write in response to your April 9, 2026 letter regarding the parties' March 25 meet and confer and e-Numerate's Second Supplemental Final Infringement Contentions.

At the outset, we do not agree with a number of the characterizations in your letter concerning both the substance of the parties' discussions and the scope of e-Numerate's positions. That said, we remain committed to resolving these issues through continued meet-and-confer discussions and avoiding unnecessary motion practice where possible. We address the issues raised in your letter below to clarify e-Numerate's positions and to facilitate further discussion.

With respect to the scope of Rule 30(b)(6) testimony, the parties discussed during the meet and confer the Government's proposal to limit its witness preparation to specific source code printouts requested by e-Numerate. As we explained at that time, e-Numerate is willing to work toward a reasonable framework on this issue. However, any such limitation necessarily depends on completion of e-Numerate's source code review and access to all relevant systems. At present, those conditions have not been satisfied. The Government has not committed to producing all requested printouts, and e-Numerate has not been provided access to inspect the DAIMS code or request printouts from that system. In addition, there remain unresolved issues concerning materials available on the SEC review computer, including technical manuals identified by our reviewers, which are not source code and should not be treated as such for purposes of any page limitations. Under these circumstances, it would be premature to impose limitations on deposition topics or witness preparation based on an incomplete evidentiary record. We remain prepared to continue working with you to reach a practical resolution once these production issues are addressed.

Notwithstanding the foregoing, e-Numerate's May 16, 2025 Rule 30(b)(6) Notice already identifies with specificity the subject matter on which testimony is sought, including Topics 1 and 2, which address particular source code subject matter and related functionalities. Those topics reflect the areas in which e-Numerate seeks testimony based on the discovery record

developed to date. Given the scope of those topics, e-Numerate expects the Government to produce a witness prepared to testify regarding the relevant portions of the EDGAR system and associated functionalities implicated by those topics, and not merely to read from or address isolated source code excerpts.

Your letter also renews the request that e-Numerate withdraw Topic No. 8 on the ground that it is not relevant. We do not agree. Topic No. 8 concerns the Government's awareness of, and access to, e-Numerate's technology, including the extent to which that technology was available to or considered by individuals involved in the development and implementation of the accused systems. As discussed, individuals involved in the development of the XBRL standard and the SEC's implementation of XBRL systems, including Dr. Hamscher, were active participants during the relevant time period. Information concerning who was aware of or had access to e-Numerate's technology, what was known, when it was known, and how that knowledge informed the design and implementation of the accused systems is a proper subject of discovery.  As you are well aware, copying is a secondary consideration relevant to the Government's defense of obviousness.

By way of example, e-Numerate's technology was presented and demonstrated directly to the SEC in connection with the Commission's interactive data initiative, including at an SEC roundtable held on October 3, 2006, and chaired by Chairman Cox at which e-Numerate's software was demonstrated to SEC personnel and other participants. The transcript from this SEC roundtable was marked by you as Exhibit Diefenderfer 3 at the deposition of William M. Diefenderfer, III, taken on March 31, 2026. This direct presentation and demonstration further underscores that the Government's awareness of, and access to, e-Numerate's technology is a proper subject of discovery, including what was known, by whom, and how that information informed the development and implementation of the accused systems. If the Government contends that such information is categorically irrelevant, we ask that you provide authority supporting that position.

The Government has suggested that certain topics are improper on the ground that willfulness, inducement, and contributory infringement are not at issue in an action under 28 U.S.C. §1498. That characterization does not accurately reflect e-Numerate's claims or the purpose of the requested discovery. e-Numerate has not asserted claims for willful infringement against the United States, nor does it seek to impose liability on the Government based on inducement or contributory infringement as independent theories of recovery. Rather, as reflected in the Third Amended Complaint, this action is brought under §1498 based on the Government's use of systems that practice the asserted patents.

To the extent the Complaint references conduct that would, in a private-party context, be described in terms of inducement or contributory infringement, those allegations are descriptive of the roles played by third-party vendors and filers within the Government-mandated system. As courts have recognized, §1498 attributes such conduct to the United States where it is performed "for the Government" with its authorization and consent, and the relevant inquiry is whether the Government is using an integrated system that practices the claimed inventions. The discovery at

Shahar Harel, Esq.                                                    O'Kelly & O'Rourke, LLC
Page 3 of 5                                                                      April 15, 2026

issue—including topics concerning awareness, access, system design, and third-party participation—is directed to that system-level use, not to any claim of willfulness or indirect infringement, and is therefore properly within the scope of discovery in this case. This is consistent with the Government's prior position that, where conduct is performed for the Government with its authorization and consent, §1498 attributes such conduct to the United States and encompasses all forms of infringement arising from that conduct, including conduct that would otherwise be characterized as induced or contributory infringement. See Statement of Interest of the United States at 4–5 (Oct. 19, 2018).

Turning to Topic No. 10, your letter suggests that the topic should be withdrawn based on an asserted lack of specificity. We do not believe withdrawal is warranted. As reflected in the deposition notice, Topic No. 10 is directed to the Government's own assessment of improvements over prior filing systems, including those associated with the adoption and implementation of XBRL within the SEC's systems. The Government previously operated systems for receiving and processing filings prior to the adoption of XBRL, and Topic No. 10 seeks information regarding how the accused systems compare to those prior systems, including any improvements in functionality, efficiency, or other benefits. This information is directly relevant to the operation and capabilities of the accused systems, the Government's evaluation of those systems, and issues that may bear on damages. To the extent the Government believes that further clarification would be helpful, we are open to discussing reasonable refinements, but we do not agree that the topic should be withdrawn or materially narrowed.

With respect to Topic No. 6, your characterization of the topic as seeking improper "hypothetical" non-infringing alternatives does not reflect e-Numerate's position. The topic seeks the Government's knowledge of non-infringing alternatives, including prior paper-based and legacy filing systems and other alternatives to the use of the XBRL standard, based on information already within the Government's possession. The topic is therefore directed to factual information known to the Government, not expert hypotheticals. While we are willing to discuss reasonable parameters for this topic, we do not agree that it should be limited in the manner suggested.

Turning to Request for Production No. 40, your letter seeks production of e-Numerate's representation agreement based on the Government's view of recoverable costs under 28 U.S.C. § 1498(a). As discussed, e-Numerate is willing to supplement its response to confirm that there is no third-party litigation funding in this matter, provided that such supplementation is not construed as a waiver of privilege. However, e-Numerate does not agree that its representation agreement is discoverable. That agreement reflects attorney-client communications, litigation strategy, and attorney work product, and it is not relevant to any claim or defense at issue in this case. The Government's position appears to rest on a legal argument concerning the scope of recoverable costs, but that issue does not require disclosure of privileged fee arrangements at this stage. If the Government contends otherwise, we ask that you provide authority supporting that position so that we can evaluate it further.

Before addressing your assertions regarding e-Numerate's infringement contentions, it is important to clarify the context in which those contentions were served. As reflected in the parties' discussions, a number of issues remain unresolved and are dependent on ongoing discovery, including completion of source code inspections, production of requested printouts, and access to systems such as DAIMS that have not yet been made available. In that context, e-Numerate has consistently taken the position that the parties should continue working toward practical and proportional solutions and that issues should be presented to the Court only if they cannot be resolved through further discussion. We continue to believe that approach is appropriate.

Against that backdrop, your characterization of e-Numerate's Second Supplemental Final Infringement Contentions as a "radical change" to the case is not accurate. The supplemental contentions are the direct result of information obtained during fact discovery, which remains ongoing and is not scheduled to close until June 5, 2026. As discovery has progressed, including through source code inspections and review of Government-produced materials, e-Numerate has refined its infringement contentions to reflect the evidentiary record as it has developed. This is a standard and expected aspect of patent litigation, where infringement theories are clarified and supported as relevant technical evidence becomes available. Consistent with the Court's guidance, the purpose of discovery is to ensure that the parties are not surprised at trial, not to require the premature disclosure of every argument or evidentiary detail while discovery is still underway. e-Numerate's supplemental contentions reflect precisely that process—they provide additional specificity and evidentiary support based on the information obtained to date, and will continue to be refined as appropriate based on the ongoing development of the factual record, rather than introducing any new or unexpected theory.

e-Numerate has not changed the fundamental nature of this case. The case has always involved the Government's use of XBRL-related systems across agencies, including systems implemented with the assistance of third-party vendors, in which XBRL is embedded within the processing, validation, and analytical functions of those systems. The asserted patents share a common specification and technological framework, and the infringement theories continue to focus on the same core functionality relating to the processing, transformation, validation, and analysis of tagged numerical data and the application of rule-based taxonomy structures that define and govern that data. The supplemental contentions do not introduce new systems or new theories of liability; they reflect how the asserted patents apply to the evidence now available.

Similarly, e-Numerate's asserted claims remain consistent with the scope of the case as defined by the Court's procedures. To the extent claims have been reasserted or refined, those decisions are tied to the Government's evolving invalidity positions and the confirmation of infringement through discovery. The Government's assertion of undue prejudice is therefore unfounded. The same systems remain at issue, the evidence relied upon has been produced by the Government, and no new categories of technology have been introduced. The ordinary progression of discovery, in which infringement theories are refined based on the evidence produced, does not constitute undue prejudice. Moreover, to the extent that the Government is allegedly prejudiced by the assertion of previously asserted claims against the Government

Shahar Harel, Esq.                                                    O'Kelly & O'Rourke, LLC
Page 5 of 5                                                              April 15, 2026

agencies themselves, that prejudice to be ameliorated by, for example, providing a modest extension of the discovery deadline.  We are open to discussing that with you.

Your letter also suggests that the supplemental contentions merely identify claims that e-Numerate "seeks" to assert. That is not correct. The claims identified in the Second Supplemental Final Infringement Contentions are being asserted in this case based on the evidentiary record developed during discovery.

Finally, your arguments regarding the doctrine of equivalents raise issues that go to the merits of e-Numerate's claims, not to the proper scope of discovery. e-Numerate has consistently asserted the applicability of the doctrine of equivalents, and its infringement contentions and responsive discovery set forth those theories. To the extent the Government seeks clarification regarding the scope of those theories, e-Numerate is willing to meet and confer regarding a reasonable framework for addressing that issue, but does not agree that any further limitation is warranted at this time.

We appreciate the Government's continued engagement on these issues and agree that further meet-and-confer discussions would be productive. Many of the issues raised in your letter remain intertwined with the status of ongoing discovery and the development of the factual record. We believe they can be narrowed or resolved through continued discussion. We are available to meet and confer at your convenience and are prepared to work toward practical resolutions that avoid unnecessary motion practice.

Sincerely,

*/s/ Gerard M. O'Rourke*

Gerard M. O'Rourke

CC: All Counsel of Record (via electronic mail)