**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| E-NUMERATE SOLUTIONS, INC. and E-NUMERATE, LLC, | |
| Plaintiffs, | Case No. 19-859-RTH |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**<u>NON-PARTY DONNELLEY FINANCIAL SOLUTIONS, INC.'S MOTION TO QUASH PLAINTIFFS' SUBPOENA TO TESTIFY AT A DEPOSITION AND TO PRODUCE DOCUMENTS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND................................................................ 3

    a.    The Underlying Action ................................................................................ 3

    b.    DFIN's Non-Party Status............................................................................ 3

    c.    The 2024 Subpoena, DFIN's Objections, and Corresponding Meet and Confer ...... 4

    d.    E-Numerate's Twenty-Month Silence and the 2026 Subpoena............................... 5

III.   LEGAL STANDARDS ....................................................................................... 6

    a.    RCFC 45 and the Duty to Avoid Undue Burden on Non-Parties ............................. 6

    b.    Mandatory Grounds for Quashing a Subpoena........................................................ 6

    c.    Permissive Grounds for Quashing a Subpoena....................................................... 7

    d.    Proportionality ...................................................................................... 7

    e.    Heightened Protection for Non-Parties.................................................................. 7

IV.   ARGUMENT ................................................................................................. 8

    a.    The Deposition Demand Should Be Quashed ........................................................ 8

    b.    The 2026 Subpoena Subjects DFIN to Undue Burden ............................................ 10

    c.    The 2026 Subpoena Constitutes an Impermissible Fishing Expedition ................... 12

    d.    The 2026 Subpoena Fails to Allow a Reasonable Time to Comply ....................... 13

    e.    The 2026 Subpoena Seeks Privileged and Protected Information.......................... 14

    f.    The 2026 Subpoena Seeks Trade Secrets and Confidential Commercial Information ...................................................................................... 14

    g.    E-Numerate's Twenty-Month Delay Undermines Any Claim of Need ................. 15

    h.    The Information Sought Is Available from Less Burdensome Sources ................. 16

V.    CONCLUSION................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998)..........................................................................................8

*e-Numerate Solutions, Inc. v. Mattress Firm Holding Corp., Merrill
    Communications LLC, and Merrill Corporation*,
    C.A. No. 17-933-RGA .............................................................................................3, 4, 5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    218 F.R.D. 423, 424 (D. Del. 2003) ...................................................................................7

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) ...........................................................................................7

**Other Authorities**

RCFC 26 ...................................................................................................................................13

RCFC 26(b)(1)..........................................................................................................................7

RCFC 26(b)(2)(C).................................................................................................................7, 16

RCFC 26(b)(2)(C)(i)................................................................................................................8

RCFC 34 ...................................................................................................................................11

RCFC 45 ............................................................................................................................5, 8, 11

RCFC 45(c)..........................................................................................................................7, 10

RCFC 45(c)(1)(A).....................................................................................................................10

RCFC 45(d)(1) ................................................................................................................. *passim*

RCFC 45(d)(2)(B)(ii)...........................................................................................................6, 9

RCFC 45(d)(3)(A) and (B) ...................................................................................................1, 2

RCFC 45(d)(3)(A) ...................................................................................................6, 10, 13, 14

RCFC 45(d)(3)(B)..................................................................................................................7, 14

RCFC 45(d)(3)(C)....................................................................................................................15

Non-Party Donnelley Financial Solutions, Inc. ("DFIN"), by and through its undersigned counsel, respectfully moves this Court pursuant to Rules 45(d)(3)(A) and 45(d)(3)(B) of the Rules of the United States Court of Federal Claims (the "RCFC") for an order quashing the subpoena served on it by Plaintiffs E-Numerate Solutions, Inc. and E-Numerate, LLC (collectively, "e-Numerate") on May 15, 2026 (the "2026 Subpoena").

## I.     <u>INTRODUCTION</u>

DFIN is not a party to this action. It is not referenced in the pleadings. E-Numerate has never asserted claims of patent infringement against DFIN, nor could it. Yet, e-Numerate now seeks to compel DFIN — a stranger to this litigation — to produce a corporate representative for deposition on ten sprawling technical and financial topics and to turn over vast categories of proprietary documents and electronically stored information concerning one of DFIN's products, all on less than three weeks' notice and a mere two days before the close of fact discovery.[1]

The 2026 Subpoena is the latest in a pattern of escalating, unreasonable demands that e-Numerate has directed at DFIN over the course of this litigation. E-Numerate first served a subpoena on DFIN in April 2024, demanding production of 35 categories of documents relating to virtually every aspect of DFIN's proprietary ActiveDisclosure product. DFIN timely served comprehensive objections in May 2024, and the parties thereafter exchanged correspondence regarding the improper scope of e-Numerate's demands. Rather than narrow its requests during the meet and confer process, e-Numerate instead expanded them — increasing the categories from 35 to 39 and, for the first time, demanding a deposition. DFIN responded in August 2024,

---

[1] As addressed further below, the 2026 Subpoena is fatally vague with respect to what documents, if any, e-Numerate is demanding that DFIN produce. Nevertheless, out of an abundance of caution, and since the "Production" section of the subpoena form (Form 6B) purportedly includes the "Schedule attached as Exhibit A," DFIN seeks to quash the 2026 Subpoena in full, including but not limited to the extent it seeks production of materials covered by the deposition topics set forth in Exhibit B to the 2026 Subpoena.

characterizing the subpoena as a "fishing expedition" and explaining that e-Numerate's purported narrowing was illusory. E-Numerate then fell silent for approximately twenty months, during which it took *no action whatsoever* to obtain information or materials from DFIN or even to respond to DFIN's letter of August 2024.

Now, on the eve of the fact discovery deadline this Court set in its February 26, 2026 Order, e-Numerate has served a new subpoena that is even more expansive than the one it abandoned — adding ten multi-part deposition topics, a detailed financial interrogatory spanning fiscal years 2013 through 2022, and entirely new subject matter areas including cloud infrastructure, APIs, middleware, rendering engines, and validation engines. The compliance date of June 3, 2026, falls just two days before the Court's June 5, 2026 fact discovery cutoff — revealing that the subpoena is not a good-faith attempt to provide DFIN with a reasonable period to respond, but rather a last-ditch effort by e-Numerate to extract discovery from a non-party before time runs out, an improperly rushed exercise that is wholly the product of e-Numerate's own unjustified delay.

The 2026 Subpoena should be quashed in its entirety. It subjects DFIN to undue burden; seeks privileged, confidential, and trade secret information without justification; fails to allow a reasonable time to comply; is grossly disproportionate to the needs of this case; violates the geographic limitations applicable to non-parties; and seeks information that can be obtained through less burdensome means. RCFC 45(d)(3)(A) and (B) compel that result.

2

## II.    RELEVANT FACTUAL BACKGROUND

### a.    The Underlying Action

This patent infringement case has been pending since 2019.[2] E-Numerate filed suit against the United States alleging that government agencies infringed seven of e-Numerate's purported patents (the "Patents-in-Suit"): U.S. Patent Nos. 7,650,355; 8,181,816; 9,262,383; 9,262,384; 9,268,748; 9,600,842; and 10,223,337. As DFIN understands it, the case specifically accuses the Securities and Exchange Commission ("SEC"), the Federal Deposit Insurance Corporation, the Federal Financial Institutions Examining Council, the United States Department of the Treasury, the Office of Management and Budget, the Federal Energy Regulatory Commission, and the United States Department of Energy of infringement. *See generally* Third Amended Complaint (ECF 142). The action is related to a prior case in the U.S. District Court for the District of Delaware: *e-Numerate Solutions, Inc. v. Mattress Firm Holding Corp., Merrill Communications LLC, and Merrill Corporation*, C.A. No. 17-933-RGA.

### b.    DFIN's Non-Party Status

DFIN is not a party to this action and is not referenced in the pleadings. E-Numerate has never asserted claims of patent infringement against DFIN. Among other things, DFIN develops and offers a product known as "ActiveDisclosure," which its customers use to create and process XBRL documents, including documents filed with the SEC. *See* Declaration of Andrew H. Winetroub filed concurrently herewith ("Winetroub Decl.") at ¶ 4. DFIN has no interest in the outcome of this litigation between e-Numerate and the United States. *Id*. at ¶ 5.

---

[2] As DFIN is a non-party to this action, and since this matter has been pending in this Court for the better part of a decade, DFIN provides herein a brief summary as it understands the underlying action while recognizing the Court is already familiar with the relevant facts of the case.

c. **The 2024 Subpoena, DFIN's Objections, and Corresponding Meet and Confer**

On or about April 26, 2024, e-Numerate served a subpoena on DFIN (the "2024 Subpoena") seeking production of documents in 35 categories relating to virtually all aspects of ActiveDisclosure, including its design, operation, source code, marketing, sales, financial information, and communications about the Patents-in-Suit. A true and correct copy of the 2024 Subpoena is attached to the Winetroub Decl. as Ex. B. The 2024 Subpoena demanded production from DFIN at a time when fact discovery between the parties to this action had only just commenced.

On May 24, 2024, DFIN timely served its Responses and Objections to the 2024 Subpoena, raising comprehensive general and specific objections. A true and correct copy of DFIN's objections to the 2024 Subpoena is attached to the Winetroub Decl. as Ex. C. DFIN objected, among many other grounds, that the subpoena was premature and misdirected because e-Numerate was embarking on "a fishing expedition for documents from non-party DFIN before developing the facts of the case through discovery with the actual litigants." *Id*. DFIN further objected that the subpoena was overbroad, unduly burdensome, disproportionate to the needs of the case, and sought privileged and trade secret information. *Id*.

Following service of DFIN's objections, the parties held a telephone conference after which, on July 25, 2024, e-Numerate's counsel sent a letter purporting to "narrow" the subpoena. A true and correct copy of that letter is attached to the Winetroub Decl. as Ex. D. In reality, the letter increased the number of categories of documents sought from 35 to 39 and, for the first time, sought to depose a DFIN witness. *Id*. The letter stated that the 39 categories were "the minimum that e-Numerate is willing to accept from DFIN" and threatened to "promptly move to enforce the subpoena" if DFIN refused. *Id*. While e-Numerate offered to "hold off on seeking source code" if

4

DFIN agreed to produce a deposition witness, e-Numerate simultaneously reserved the right to seek source code production, rendering the purported compromise illusory. *See id*.

On August 23, 2024, DFIN's counsel responded, characterizing the subpoena as a "fishing expedition" and explaining that e-Numerate's position was "inconsistent with Rule 45, which imposes a duty to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" A true and correct copy of the response letter sent on behalf of DFIN is attached to the Winetroub Decl. as Ex. E. The undersigned emphasized that e-Numerate's purported narrowing was illusory — the demands had in fact expanded — and that e-Numerate was "unwilling to propose anything remotely resembling a reasonable scope for a third-party subpoena." *Id*. DFIN reserved all rights and remedies, including those provided under Rule 45(d)(1). *Id*.

### d. E-Numerate's Twenty-Month Silence and the 2026 Subpoena

After the August 23, 2024 letter, DFIN heard nothing further from e-Numerate. Winetroub Decl. ¶ 10. For approximately twenty months, e-Numerate made no effort to enforce the 2024 Subpoena, move to compel, or resume discussions with DFIN. *Id*.

Then, out of the blue, on May 15, 2026, e-Numerate served the 2026 Subpoena on DFIN, commanding both a deposition and production of documents. A true and correct copy of the 2026 Subpoena is attached to the Winetroub Decl. as Ex. A. The 2026 Subpoena sets a deposition date of June 3, 2026 — less than three weeks after service — at the offices of e-Numerate's counsel in Wilmington, Delaware. *Id*. The subpoena contains an Exhibit A with expansive definitions and ten deposition topics with numerous sub-topics. *Id*. It also contains an Exhibit B consisting of an improper, detailed financial interrogatory that purports to require DFIN to create a new business record by completing a "SEC Filing Products & Services — Financial Summary Template" with revenue, cost, profit, and operational data for every fiscal year from 2013 through 2022. *Id*.

Prior to service of the 2026 Subpoena, on February 26, 2026, this Court issued an Opinion and Order addressing multiple pending discovery disputes between the parties. ECF 209. In that Order, the Court amended the discovery schedule such that "the close of fact discovery is extended to June 5, 2026." *Id*. at 29. E-Numerate then served the 2026 Subpoena on DFIN on May 15, 2026 (two-and-a-half months after the fact discovery deadline was reset) and demanded compliance by June 3, 2026, a mere two days before fact discovery closes. Winetroub Decl., Ex. A.

The timing makes clear that the 2026 Subpoena is a product of e-Numerate's rush to obtain non-party discovery before the clock runs out, not a reasoned or proportionate effort to obtain evidence it actually needs. Further, it is a per se abuse of the discovery process in that e-Numerate effectively seeks party discovery from a non-party, all in an improper effort apparently to determine if DFIN is an alleged infringer (it is not).

## III. LEGAL STANDARDS

### a. RCFC 45 and the Duty to Avoid Undue Burden on Non-Parties

RCFC 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." RCFC 45(d)(1). The court is charged with enforcing this duty and must "impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply." *Id*. Moreover, RCFC 45(d)(2)(B)(ii) requires that the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." RCFC 45(d)(2)(B)(ii).

### b. Mandatory Grounds for Quashing a Subpoena

Under RCFC 45(d)(3)(A), the court *must* quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a non-party to comply beyond the geographical limitations specified in RCFC 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

### c.  **Permissive Grounds for Quashing a Subpoena**

Under RCFC 45(d)(3)(B), the court may quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute.

### d.  **Proportionality**

Discovery must be proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCFC 26(b)(1); RCFC 26(b)(2)(C). These proportionality constraints apply with particular force to non-party discovery, as the rules impose a duty "to avoid imposing undue burden or expense" on non-parties subject to a subpoena. RCFC 45(d)(1).

### e.  **Heightened Protection for Non-Parties**

Courts consistently afford non-parties greater protection from the burdens of discovery than parties. It is "incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, 424 (D. Del. 2003). *See*

7

*also Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (recognizing heightened protection for non-parties under Rule 45); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry).

## IV.  ARGUMENT

### a.  The Deposition Demand Should Be Quashed

The 2026 Subpoena commands DFIN — a non-party — to designate one or more corporate representatives to testify on ten detailed deposition topics, each subdivided into multiple sub-topics. This demand should be quashed for several independent reasons.

First, e-Numerate has made no showing that deposition testimony from DFIN is necessary to its prosecution of claims against the United States. E-Numerate's claims specifically target government agencies — the SEC, FDIC, FFIEC, Treasury, OMB, FERC, and DOE — not DFIN. The United States, as the actual defendant, is uniquely positioned to provide information about how XBRL filings are received, validated, and processed by those agencies. DFIN has never been accused of infringement (nor could it be), and its internal product operations are not the subject of e-Numerate's claims. Before compelling testimony from a non-party, the rules call for e-Numerate to seek the discovery from another source (such as the parties to the suit) "that is more convenient, less burdensome, or less expensive." *See* RCFC 26(b)(2)(C)(i). E-Numerate cannot make that threshold showing here.

Second, the scope of the deposition topics is staggering. The ten topics cover the entire design, architecture, and operation of ActiveDisclosure; its filing processes; its handling of XBRL instance documents, taxonomies, and Inline XBRL; its validation and error-handling mechanisms; its data transformation and linking capabilities; its macros, scripts, and automation features; its financial performance and customer information; its interactions with the SEC; its cloud

8

infrastructure, APIs, middleware, rendering engines, and storage systems; and the retention of its source code and historical software versions. Preparing a corporate designee to testify competently on this extraordinary range of topics would require the diversion of significant DFIN resources, including executive, engineering, and financial personnel time, all at DFIN's expense. RCFC 45(d)(2)(B)(ii) requires that the Court protect a non-party from precisely this kind of significant, and wholly improper, expense.

Third, e-Numerate's deposition demand does not stem from a good-faith compromise related to the 2024 Subpoena — it is instead an expansion of discovery. In other words, e-Numerate's much-delayed response to its initial subpoena to DFIN, which DFIN correctly objected to on the basis of, *inter alia*, its gross overbreadth, was to expand the scope, and corresponding burdens, further still. In its July 2024 letter, e-Numerate first raised the possibility of a deposition, suggesting it might "minimize the need for production of DFIN's source code." *See* Winetroub Decl., Ex. D. But e-Numerate simultaneously reserved the right to seek source code anyway, and its letter demanded 39 categories of documents in addition to the deposition. *Id*. Now, in the 2026 Subpoena, the deposition topics are not presented as an alternative to document production — they appear to be cumulative (although DFIN cannot be entirely certain due to the facial ambiguity that infects the 2026 Subpoena). The deposition is thus not a narrow substitute for broader discovery; it is yet another layer of burden heaped upon DFIN, a non-party.

Fourth, the timing of the deposition demand independently warrants it being quashed. The 2026 Subpoena was served on May 15, 2026, and commands DFIN to appear for deposition on June 3, 2026 — just nineteen days later. Selecting and then preparing a corporate representative, or, perhaps more likely given the extent of the topics, multiple corporate representatives, to testify on ten complex technical and financial topics in less than three weeks is flatly unreasonable under

9

any circumstances. It is all the more unreasonable where, as here, e-Numerate waited approximately twenty months before serving the subpoena, and the June 3 date was plainly driven not by any genuine need but by the June 5, 2026 fact discovery cutoff set by this Court. E-Numerate cannot manufacture urgency through its own delay and then impose the consequences of that delay on a non-party.

Fifth, while DFIN is continuing to assess the 2026 Subpoena and who the appropriate corporate representative(s) would be in the event the instant motion is denied, currently the company anticipates that none of the potential corporate representatives would reside, be employed, or regularly transact business within 100 miles of Wilmington, Delaware. *See* Winetroub Decl. ¶ 11. As a result, the deposition demand in the 2026 Subpoena violates the geographic limitations on compliance set by RCFC 45(c)(1)(A). Therefore, under RCFC 45(d)(3)(A)(ii), the Court must quash the 2026 Subpoena as it "requires a person who is neither a party nor a party's officer to comply beyond the limitations specified in RCFC 45(c)."

### b.  **The 2026 Subpoena Subjects DFIN to Undue Burden**

Under RCFC 45(d)(3)(A)(iv), the Court must quash a subpoena that "subjects a person to undue burden." As set forth herein, the 2026 Subpoena imposes an extraordinary and utterly unjustified burden on DFIN, a non-party with no stake in this litigation.

The 2026 Subpoena is grossly overbroad on its face. Its document requests and deposition topics sweep in virtually all documents relating to ActiveDisclosure — design documents, architecture specifications, source code, system configurations, financial records, customer information, marketing materials, communications with the SEC, and more. Further, the financial template set forth in Exhibit B demands that DFIN compile and certify revenue, cost, profit, and operational data broken down by fiscal year for an entire decade (2013–2022). Not only is the

10

burden imposed by that demand wholly unjustified and disproportionate to the needs of the case,[3] it also calls for DFIN to create a new business record that does not currently exist. That is not the proper subject of a demand for production under the Rules. *See generally* RCFC 34, 45. In its May 2024 objections, DFIN correctly observed that e-Numerate's demands amount to requiring a non-party to "turn over the crown jewels to one of its products." The 2026 Subpoena is even more expansive.

The burden is compounded by the subpoena's breadth across multiple dimensions. The definitions section employs the broadest possible construction of terms like "document," "communication," "concerning," "relating to," "source code," "ActiveDisclosure," "The Government," and "DFIN" each designed to maximize the scope of production. *See* 2026 Subpoena, Ex. A at 1-5 (Winetroub Decl., Ex. A). The "Relevant Dates" definition sweeps from the first decision to design ActiveDisclosure through the present. *Id*. at 5. The result is a demand that encompasses essentially the entire history of a complex software product — a scope that would be tremendously burdensome even for a party, and that is wholly disproportionate when directed at a non-party.

The pattern of e-Numerate's demands confirms the unreasonableness of its approach. E-Numerate's original subpoena contained 35 document requests. Winetroub Decl., Ex. B. Its purported "narrowing" in July 2024 expanded the demands to 39 categories. *Id*., Ex. D. The 2026 Subpoena expands further still, adding ten deposition topics covering areas not addressed in any prior request — including cloud infrastructure, APIs, middleware, rendering engines, XBRL Formula functionality, Inline XBRL processing, and source code retention practices. *Id*., Ex. A. At no point has e-Numerate made any genuine effort to tailor its demands to the actual issues in

---

[3] Moreover, DFIN is a public company, such that information regarding its financial profile is publicly available through its SEC filings.

this case. Rather, its successive demands reflect an escalating pattern of overreach directed at a non-party. This is precisely the conduct that RCFC 45(d)(1) prohibits: the failure to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

### c.  **The 2026 Subpoena Constitutes an Impermissible Fishing Expedition**

The 2026 Subpoena is not a targeted request for evidence relevant to identified issues in this case. It is a fishing expedition. E-Numerate's theory of relevance rests on its contention that the United States "assumed liability for all infringement of e-Numerate's patents done by third parties such as DFIN" by filing the Statement of Interest in the Delaware litigation. *See* Winetroub Decl., Ex. D (O'Rourke letter of July 25, 2024). But this theory does not come close to justifying the sweeping non-party discovery e-Numerate seeks.

The United States has expressly denied in its Answer that any contractor has infringed any valid claim of the Asserted Patents with its authorization or consent. *See* ECF 147 at 35. For e-Numerate to use the claims it has asserted against the United States as a basis for intrusive, expensive, and highly burdensome discovery from DFIN is plainly improper. E-Numerate's proper avenue is to obtain relevant discovery from the actual defendant — the United States — which has both the obligation to respond to party discovery and access to information about its own agencies' practices, systems, and XBRL filing requirements.

Moreover, this Court's February 2026 Order itself demonstrates that the parties have been engaged in extensive discovery from the government regarding the accused systems, including detailed interrogatory responses about agency-by-agency use of XBRL and related technologies. E-Numerate has not demonstrated — and cannot demonstrate — that the specific information it seeks from DFIN is unavailable from the United States or from publicly available sources.

Indeed, rather than seek discovery relevant to this action, e-Numerate's 2024 Subpoena and now its 2026 Subpoena instead appear aimed at abusing the discovery process in an effort to

12

fish for allegations that DFIN itself is an infringer (again it is not). E-Numerate's counsel has previously admitted as much. *See* Winetroub Decl., Ex. D (stating that e-Numerate's "position is that the United States assumed liability for all infringement of e-Numerate's patents done by third parties such as DFIN . . . ."). That this effort is a misuse of the discovery rules, and a brazen attempt to circumvent the scope of discovery established by RCFC 26, is obvious. Such misconduct should not be rewarded with obtaining exceedingly burdensome and highly intrusive discovery from a non-party. To the contrary, it should be rejected in full, and the third party protections enshrined in the operative rules should be enforced.

### d.  The 2026 Subpoena Fails to Allow a Reasonable Time to Comply

Under RCFC 45(d)(3)(A)(i), the Court must quash a subpoena that "fails to allow a reasonable time to comply." The 2026 Subpoena was served on May 15, 2026, and demands both a deposition and document production on June 3, 2026. That purports to give DFIN less than three weeks to locate, collect, and review voluminous documents for responsiveness, privilege, and confidentiality; prepare a corporate designee, or multiple designees, to testify on ten complex topics; and compile certified financial data spanning a decade. This timeline is unreasonable on its face.

The unreasonableness of the compliance deadline set by e-Numerate is amplified by context. E-Numerate abandoned its pursuit of the 2024 Subpoena for approximately twenty months. It made no effort whatsoever to enforce the initial subpoena, seek a court order, or even communicate with DFIN during that period. Now, having voluntarily, and knowingly, permitted nearly the entire fact discovery period to lapse without action, e-Numerate seeks to compress a massive non-party discovery effort into nineteen days. The June 3 compliance date is not the product of e-Numerate providing DFIN with a reasonable period to respond; it is the product of the June 5, 2026 fact discovery cutoff that this Court imposed in its February 26, 2026 Order. E-

13

Numerate's self-created time pressure cannot justify imposing an unreasonable deadline on a non-party. The burden and consequence of e-Numerate's delay must fall on e-Numerate — not on DFIN. *See* RCFC 45(d)(1) (requiring "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

###### e.  **The 2026 Subpoena Seeks Privileged and Protected Information**

Under RCFC 45(d)(3)(A)(iii), the Court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." The 2026 Subpoena, by its sweeping scope, necessarily encompasses documents and communications protected by the attorney-client privilege and the work product doctrine, including communications between DFIN and its counsel regarding this litigation, the subpoenas, and DFIN's legal rights and obligations. E-Numerate has identified no exception or waiver that would permit compelled production of these materials.

###### f.  **The 2026 Subpoena Seeks Trade Secrets and Confidential Commercial Information**

Under RCFC 45(d)(3)(B)(i), the Court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." The 2026 Subpoena demands exactly that.

The subpoena seeks DFIN's source code, system architecture documents, database structures, API specifications, middleware configurations, rendering engine designs, validation engine logic, and other proprietary technical information — materials that constitute and/or include DFIN's trade secrets and the competitive core of its ActiveDisclosure product. DFIN's source code is highly sensitive and competitively valuable, and e-Numerate has provided no justification for imposing such extraordinary discovery burdens on a non-party to obtain it. *See* Winetroub Decl. ¶ 4.

The subpoena also demands comprehensive financial information, including revenue, profits, costs, pricing, license fees, subscription fees, customer names, customer counts, and filing volumes for every year from 2013 through 2022. This constitutes competitively sensitive commercial information the disclosure of which would cause concrete harm to DFIN.

Even under RCFC 45(d)(3)(C), which permits the Court to order disclosure of trade secrets upon a showing of "substantial need," e-Numerate cannot meet that standard here. E-Numerate has never demonstrated that DFIN's proprietary product information is necessary to prove its claims against the United States, and the information it seeks is available — to the extent it is relevant at all — from the actual defendant and from public sources. This Court has recognized the importance of protecting competition-sensitive information in this very case. In its February 26, 2026 Order, the Court granted the government's motion to preclude e-Numerate's party representative from accessing competition-sensitive information, finding that "access to the competition-sensitive information in this case may well furnish [the party representative] with knowledge that the Court cannot expect him to magically segregate and protect in his brain." The same logic applies with even greater force to non-party DFIN's proprietary information. Even with the operative protective order in place, e-Numerate would be able to use DFIN's highly sensitive, competitively important information for purposes of this litigation, and to disclose it to a range of persons such as "experts, consultants, and their staff" as well as in-house counsel, with each disclosure creating additional risk to DFIN. In the absence of a showing of any need, let alone the substantial need required under the rules, the appropriate remedy is to quash the subpoena in full.

**g.  E-Numerate's Twenty-Month Delay Undermines Any Claim of Need**

E-Numerate's approximately twenty-month silence between August 2024 and May 2026 fatally undermines any claim that the discovery it seeks from DFIN is necessary or urgent. After DFIN served its objections and the parties exchanged correspondence, e-Numerate threatened to

15

"promptly move to enforce the subpoena." It never did. Instead, it waited nearly two years before serving a new, expanded subpoena.

This delay has at least two consequences. First, it demonstrates that e-Numerate has been able to prosecute its case against the United States — including through extensive fact discovery, multiple rounds of briefing, and oral argument on discovery disputes — without the materials it seeks from DFIN. If this evidence were truly necessary, e-Numerate would not have abandoned its pursuit for twenty months. Second, the delay confirms that the June 3, 2026 compliance deadline is driven not by any genuine need for DFIN's information but by the approaching close of fact discovery. E-Numerate had from April 2024 — when it first served a subpoena — to pursue any purportedly needed discovery in an orderly fashion and on a reasonable timeline. It chose not to. DFIN should not bear the consequences of that choice.

### h.  The Information Sought Is Available from Less Burdensome Sources

RCFC 26(b)(2)(C) directs courts to limit discovery when the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." This principle applies with particular force to non-party subpoenas.

E-Numerate's claims are against the United States. The United States, as the defendant, is positioned to provide — and, from what DFIN can glean from the docket in this action, has been providing through party discovery — information about how its agencies receive, validate, and process XBRL filings. To the extent e-Numerate seeks information about how entities prepare and file XBRL documents with the SEC, much of that information is publicly available through SEC EDGAR filings and industry publications. E-Numerate has made no showing that it has exhausted these less burdensome alternatives before turning to the extreme measure of a non-party subpoena of this scope.

16

## V.    **CONCLUSION**

For the foregoing reasons, DFIN respectfully requests that the Court enter an order:

1.    Quashing the May 15, 2026 Subpoena in its entirety, including both the demand for deposition testimony and the demand for production of documents;

2.    Relieving DFIN of any obligation to appear for deposition or produce documents in response to the 2026 Subpoena;

3.    Awarding DFIN its reasonable attorneys' fees and costs incurred in connection with this motion, pursuant to RCFC 45(d)(1); and

4.    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 29, 2026

**NIXON PEABODY LLP**

*s/Brian A. Hill*

Brian A. Hill, Esq.
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Telephone: (202) 585-8000
bhill@nixonpeabody.com

Robert A. Weikert, Esq.
Andrew H. Winetroub, Esq.
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111-3600
Telephone: (415) 984-8200
rweikert@nixonpeabody.com
awinetroub@nixonpeabody.com

*Attorneys for Non-Party*
*Donnelley Financial Solutions, Inc.*

17