IN THE UNITED STATES COURT OF FEDERAL CLAIMS

E-NUMERATE SOLUTIONS INC. and )
E-NUMERATE LLC, )
                                           )
                 Plaintiffs, )
                                           )     Civil Action No. 1:19-cv-00859-MHS
                 v. )
                                           )
THE UNITED STATES, )
                                           )
               Defendant. )

**NON-PARTY INSIGHTSOFTWARE, LLC'S
MOTION TO QUASH PLAINTIFFS' SUBPOENA
TO TESTIFY AT A DEPOSITION
AND TO PRODUCE DOCUMENTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION .......................................................................................................... 1

RELEVANT BACKGROUND .......................................................................................... 4

    A.    The Lawsuit and Its Discovery Deadlines........................................................ 4

    B.    ISW and E-Numerate.......................................................................................... 6

    C.    E-Numerate's "First Subpoena" Dated July 17, 2024.................................... 7

    D.    E-Numerate's April 2026 "Request for Information", the E-Numerate Table, and the Deposition Subpoena.......................................................... 9

    E.    ISW's Additional Meet and Confer Efforts.................................................... 11

ARGUMENT .................................................................................................................. 14

    A.    The Deposition Subpoena Subjects ISW to Undue Burden and Expense by Seeking Dozens of Categories of Information Over a Decade-Plus Time Period, Including Information Unavailable to ISW. ......................... 16

    B.    The Deposition Subpoena Did Not Allow a Reasonable Time to Comply. .. 20

    C.    The Deposition Subpoena Improperly Requires ISW to Comply Beyond the Geographical Limits. ............................................................................... 21

    D.    E-Numerate Has Waived Its Opportunity to Seek Further Discovery from ISW. ....................................................................................................... 22

    E.    E-Numerate Should Be Sanctioned under RCFC 45(d)(1). ......................... 24

CONCLUSION................................................................................................................. 24

RCFC 7.3 AND 26 CERTIFICATE OF COMPLIANCE............................................. 26

CERTIFICATE OF SERVICE....................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Broumand v. Joseph,* 522 F. Supp. 3d 8 (S.D.N.Y. 2021) ........................................... 22

*Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) ..................................... 15

*Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391 (D. Colo. 1998) ................ 17

*FS Med. Supplies, LLC v. TannerGAP, Inc.*, 2024 U.S. Dist. LEXIS 60738, 2024 WL 1419761 (W.D.N.C. 2024) ................................................................ 21

*Kamen Soap Products Co. v. United States*, 110 F.Supp. 430, 124 Ct. Cl. 519 (1953) ....................................................................................................... 17

*Kirkland v. United States Bankr. Court for the Cent. Dist. of Cal. (In re Kirkland)*, 75 F.4th 1030 (9th Cir. 2023) ........................................................ 22

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423 (D. Del. 2003) .......................................................................................................... 15

*Moore v. Pooches of Alrgo, Inc.*, No. 8:20-CV-2184-MSS-SPF, 2023 U.S. Dist. LEXIS 47798, 2023 WL 2584466 (M.D. Fla. Mar. 21, 2023) ......................... 22

*Scott Timber, Inc.. v. United States,* 93 Fed. Cl. 498 (2010) ..................................... 21

*Zoltek Corp. v. United States,* 61 Fed. Cl. 12 (2004) ................................................. 15


**Rules**

2002 Rules Committee Note, RCFC (as amended July 29, 2024) .............................. 22

RCFC 26 .................................................................................................................... 1

RCFC 26(b)(1) .......................................................................................................... 14

RCFC 26(d)(1) ............................................................................................................ 3

RCFC 45 ...................................................................................................... 1, 15, 22, 24

RCFC 45(c) ........................................................................................................... 14, 22

RCFC 45(c)(1)(A) ................................................................................................... 3, 21

RCFC 45(d)(1) ...................................................................................................... 14, 24

RCFC 45(d)(3)(A) .................................................................................................. 3, 14

RCFC 5(d)(1)(B) ....................................................................................................... 27

**TABLE OF EXHIBITS**

**Exhibit 1** – May 13, 2026 "Deposition Subpoena" to Insightsoftware

**Exhibit 2** – NC Secretary of State page for Insightsoftware, LLC

**Exhibit 3** – July 17, 2024 "First Subpoena" to Insightsoftware

**Exhibit 4** – July 19, 2024 Insightsoftware Objections to First Subpoena

**Exhibit 5** – July 25, 2024 Letter from E-Numerate

**Exhibit 6** – July 25, 2024 to July 26, 2024 Email Chain

**Exhibit 7** – October 31, 2024 Insightsoftware Letter to E-Numerate

**Exhibit 8** – October 31, 2024 to June 20, 2025 Email Chain

**Exhibit 9** – April 28, 2026 Letter from E-Numerate

**Exhibit 10** – May 12, 2026 Letter from Insightsoftware

**Exhibit 11** – April 28, 2026 to May 14, 2026 Email Chain

**Exhibit 12** – May 26, 2026 to July 8, 2026 Email Chain

**Exhibit 13** – July 7, 2026 E-Numerate's "Revised Topic List"

**Exhibit 14** – July 10, 2026 to July 15, 2026 Email Chain

**Exhibit 15** – Declaration of Mary Beth Fichter

**Exhibit 16** – Declaration of Claire Le Besque

**NON-PARTY INSIGHTSOFTWARE, LLC'S
MOTION TO QUASH PLAINTIFFS' SUBPOENA
TO TESTIFY AT A DEPOSITION
AND TO PRODUCE DOCUMENTS**

Non-Party Insightsoftware, LLC ("**ISW**") moves this Court to Quash the "**Deposition Subpoena**" issued by Plaintiffs E-Numerate Solutions Inc. and E-Numerate LLC (together, "**E-Numerate**") in this lawsuit (the "**Lawsuit**"), and also moves for recovery of ISW's attorneys' fees, both pursuant to Rules 26 and 45 of the Rules of the United States Court of Federal Claims ("**RCFC**"),

## INTRODUCTION

ISW is a North Carolina software company and a non-party. Through the Deposition Subpoena (attached as **Exhibit 1**), E-Numerate demanded that ISW produce one or more 30(b)(6) representatives to appear and testify in Wilmington, Delaware regarding 10 topics, 74 different subtopics, and more than 10 years of ISW technical, customer, and financial information.

ISW properly and timely objected. E-Numerate's requests were overly broad and unnecessarily burdensome because they would have required ISW to research, locate, and summarize more than 10 years of information parsed in ways that ISW does not regularly maintain.

E-Numerate's Lawsuit arises out of the Government's adoption of "**XBLR**" (a digital standard for marking financial documents) as a requirement for company filings made with the Securities and Exchange Commission ("**SEC**") and other federal agencies. However, ISW's Certent DM software has many uses unrelated to the SEC, and it is used by public and private companies both inside and outside the United

States.  ISW does not maintain customer, revenue, and usage information in a manner that segregates data based on whether a customer files with the SEC or uses the software for other purposes.  (Declaration of Mary Beth Fichter, attached as **Exhibit 15**, hereinafter cited as "Fichter Decl.", ¶¶ 9-10.)

Moreover, ISW acquired the Certent DM software during 2020 and does not have ready access to pre-2020 Certent DM information. The documents for Certent, Inc. are not digitized and are located in hard copy format within approximately 237 boxes in a California storage facility. (Declaration of Claire Le Besque, attached as **Exhibit 16**, hereinafter cited as "Le Besque Decl.", ¶ 3.)  E-Numerate's discovery requests seek information created between 2013 and 2022, and ISW cannot access such information without spending many tens of thousands of dollars over a course of months. As for revenue or usage information specific to SEC or regulatory filings, ISW cannot provide this detail since it does not maintain this information, even if the Rules required it to do so, which they do not.

E-Numerate sat on its rights in connection with the Deposition Subpoena. During 2024 ISW had received, timely objected to, and responded to an earlier subpoena of E-Numerate (the "**First Subpoena**", attached as **Exhibit 3**). In response to the First Subpoena, ISW produced certain documents and maintained its objections to producing financial and customer data. E-Numerate waited ***almost 18 months*** to follow up on ISW's production when E-Numerate asked ISW to create the table described above. When ISW objected to the request to produce the table and

suggested a meet and confer call, Plaintiffs served the Deposition Subpoena dated May 13, 2026.

ISW and E-Numerate have had several discussions about the Deposition Subpoena. During the first meet and confer call on May 26, 2026, counsel for E-Numerate suggested that E-Numerate might narrow the scope of the deposition. Thereafter, ISW repeatedly asked for a call to discuss this proposed narrowing. Finally, E-Numerate sent a revised topic list on July 7, 2026, six weeks after the parties' meet and confer call. However, the revised list suffers from the same overbreadth as the Deposition Subpoena. It includes essentially the same 10 broad topics and 41 subtopics covering extensive and detailed technical and financial information covering more than 10 years of the Certent DM program.

The Deposition Subpoena, in its original form and as revised, should be quashed pursuant to RCFC 45(d)(3)(A) because: (a) it subjects ISW to an undue burden by: seeking more than 10 years of information from ISW's predecessor company that ISW cannot readily access; inquiring into highly confidential information that is not relevant to, and is grossly disproportionate to, the needs of the Lawsuit; and requiring ISW to prepare witnesses to testify about 74 different subtopics; (b) it fails to allow a reasonable time for ISW to comply; and (c) it seeks to have ISW comply outside the geographical limits specified in RCFC 45(c)(1)(A), (b).

ISW also is entitled to an order under RCFC 26(d)(1) prohibiting E-Numerate from seeking further discovery from ISW given E-Numerate's decision to remain silent for 18 months in the face of ISW's objections to further discovery.

3

Finally, ISW should be awarded its reasonable attorneys' fees in defending against the Deposition Subpoena: a third party such as ISW should not be subjected to such burden and harassment.

## RELEVANT BACKGROUND

### A. The Lawsuit and Its Discovery Deadlines

E-Numerate filed the Lawsuit on June 11, 2019.[1] E-Numerate alleges that the United States infringed on E-Numerate patents covering the XBRL (eXtensible Business Reporting Language) markup language when the SEC and other federal agencies established XBRL as a requirement for submitting digital financial reports. (Second Amended Complaint, D.E. 53.) ISW is not mentioned in E-Numerate's complaint and is not a party to the Lawsuit.

Before filing the Lawsuit, E-Numerate filed a patent infringement lawsuit against Mattress Firm and its software vendor, Merrill Corporation, whose services Mattress Firm used to submit SEC filings using the XBRL format. (D.E. 53 at ¶¶ 8-9, 29-31.) On October 19, 2018, the United States filed a "**Statement of Interest**" in the lawsuit against Mattress Firm, saying that "the United States hereby confirms that the United States has granted its authorization and consent to the extent the Defendants use XBRL to file documents with the SEC pursuant to federal regulation." (D.E. 53 at ¶ 10.) In the Lawsuit, E-Numerate alleged that the United States thereby assumed all liability for companies that use XBRL to file documents with the SEC and for third-party vendors that use, sell, license, or host software used

---

[1] Citations to documents or docket entries filed in the Lawsuit are cited here as "D.E. [#]" but are not attached to this brief.

4

to assist companies with filing documents with the SEC using XBRL.  (D.E. 53 at ¶ 11-12, 29.)

Thus, the central issue in the Lawsuit appears to be whether companies "use XBRL to file documents with the SEC" or other United States agencies (*id*.), and whether such use of XBRL infringed on any patents of E-Numerate.  After the United States filed the Statement of Interest in the Mattress Firm lawsuit, E-Numerate filed the Lawsuit against the United States and has not pursued its claims against other parties.[2]

The parties to the Lawsuit were permitted to engage in third-party discovery, except third-party depositions, beginning on November 24, 2020.  (D.E. 36.)  General fact discovery opened on April 1, 2024.  (D.E. 118.)  As of July 25, 2025, the deadline to complete fact discovery was March 2, 2026.  (D.E. 178.)  On February 26, 2026, the deadline to complete fact discovery was extended to June 5, 2026.  (D.E. 209.)

On May 28, 2026, E-Numerate and the United States filed a Joint Status Report, seeking to extend the deadline for discovery, but with the United States objecting to extending the deadline to conduct third-party depositions.  (D.E. 216 at 1, 8-10.)  In the Joint Status Report, E-Numerate stated that the "third-parties themselves are agreeable to going forward with depositions, but requested additional time to make a witness available, to discuss the necessity of a live witness and to

---

[2] Counsel for E-Numerate confirmed during meet and confer telephone conferences, including on July 8, 2026, that E-Numerate is not bringing its patent infringement claims against third-party software vendors, including ISW, who have indemnity from the United States.

discuss narrowing of the subpoenas." (D.E. 216 at 3.) E-Numerate identified ISW as one of these third parties, citing to correspondence attached as Exhibit F to the Joint Status Report. (D.E. 216 at 3.) Counsel for ISW was not consulted in connection with the Joint Status Report. The undersigned understands that the Court has not addressed the Government's objection to E-Numerate seeking third party depositions.

E-Numerate's statement in the May 28 Joint Status Report, that non-parties were willing to be deposed in the Lawsuit, was not correct as to ISW. Two days earlier, ISW informed E-Numerate (as part of a May 26, 2026 conference call) that ISW intended to move to quash E-Numerate's Deposition Subpoena. In response, E-Numerate suggested that the parties agree to extend ISW's deadline to file such a motion to allow for additional time for the parties to meet and confer and possibly resolve issues relating to the Deposition Subpoena. (D.E. 216, Ex. F.) After several email exchanges, ISW and E-Numerate agreed to extend ISW's deadline for filing a motion to quash until July 17, 2026. (*See* **Exhibit 12** hereto.)

## B.    ISW and E-Numerate

ISW provides its customers with financial reporting and enterprise performance management software. (Fichter Decl., **Exhibit 15**, ¶ 4.) ISW's headquarters and only office in the United States is located in Raleigh, North Carolina. (Fichter Decl., **Exhibit 15**, ¶ 2; *see also* North Carolina Secretary of State records attached as **Exhibit 2**, printed from https://www.sosnc.gov/online_services/search/Business_Registration_profile/121826

6

74, last visited on July 16, 2026; https://insightsoftware.com/contact-us/, last visited July 16, 2026.)

ISW offers a product called Certent DM that ISW had acquired during 2020. Certent DM is a software solution that assists organizations with disclosure management: the management of an organization's narrative and financial disclosures both for internal use (e.g., management or board reports) or external use (e.g., annual reports or regulatory filings). (Fichter Decl., **Exhibit 15**, ¶ 4.)   Certent DM is based on a product that was owned by Certent, Inc. and acquired by ISW in near the end of calendar year 2020 (Fichter Decl., **Exhibit 15**, ¶ 5.)

Certent DM has many features that are unrelated to SEC and other federal regulatory filings.  Certent DM allows private and public companies to, among other things, create, review, and publish numerical disclosures for internal and external use.  (Fichter Decl., **Exhibit 15**, ¶ 6.)

E-Numerate, like ISW, is a software solutions provider that helps customers provide financial reporting.  As stated on E-Numerate's website, "Enumerate brings accounting, payments, operations, and HOA communication tools together in one place."   (https://goenumerate.com/products, last visited July 9, 2026.)   While it appears that E-Numerate's product focuses on homeowners' associations, its software solution is similar to ISW's in that it integrates information from multiple systems. (*See* Fichter Decl., **Exhibit 15**, ¶ 13.)

### C.    E-Numerate's "First Subpoena" Dated July 17, 2024

E-Numerate issued a document subpoena to ISW dated July 17, 2024 (the "**First Subpoena**"), attached as **Exhibit 3**.  The First Subpoena demanded ISW's

production of documents by July 31, 2024 and included 35 document requests covering virtually all aspects of the Certent DM product, starting from the time of "the first decision to design" the program and including "all" documents regarding, among other things, Certent DM's design, operation, source code, features, and versions, as well as marketing, sales, pricing, usage and financial information. (*See* Exhibit A of **Exhibit 3**, definition of "Relevant Dates" at 4 and "Documents and Things Requested" at 8-11).

ISW timely objected to the First Subpoena in a letter dated July 19, 2024, attached as **Exhibit 4**. In a subsequent meet and confer conference, counsel for E-Numerate stated that E-Numerate was willing to narrow the scope of the First Subpoena. E-Numerate sent a letter to ISW dated July 25, 2024 regarding the scope, a copy of which is attached as **Exhibit 5**. The July 25, 2024 letter generally stated that E-Numerate sought documents regarding certain functionality of ISW's software, certain financial and usage information regarding that software, and communications between ISW and counsel for the United States in the Lawsuit. E-Numerate's July 25, 2024 letter, however, included 39 document requests, *four more document requests* than its First Subpoena.

ISW counsel responded by email dated July 26, 2024, attached as **Exhibit 6**, advising that ISW would review the revised requests and follow up. On October 31, 2024, ISW sent a letter, attached as **Exhibit 7**, asserting additional objections after the First Subpoena was revised by E-Numerate's July 25, 2024 letter. Subject to and without waiving its objections, ISW produced 964 pages of documents regarding

8

Certent DM's functions and features, but ISW specifically objected to producing financial or usage information. (**Exhibit 7**.)

E-Numerate did not respond to ISW's October 31, 2024 letter *for approximately 7 months*, when it emailed ISW on June 13, 2025 (part of the October 31, 2024 to June 20, 2025 email chain attached as **Exhibit 8**). E-Numerate advised that it could not confirm whether it had downloaded the document production that ISW had made available more than seven months earlier. E-Numerate's counsel also said they would contact ISW "regarding any missing information and/or objected to information." ISW, through counsel, emailed a re-activated Sharefile link to E-Numerate on June 20, 2025, more than a year ago. (**Exhibit 8**.)

**D.  E-Numerate's April 2026 "Request for Information", the E-Numerate Table, and the Deposition Subpoena.**

E-Numerate did not communicate further with ISW until its counsel sent a letter dated April 28, 2026, attached as **Exhibit 9**, nearly *18 months* after ISW's October 31, 2024 document production. In the letter, E-Numerate stated that ISW had not produced financial information relating to Certent CDM and disputed ISW's 2024 objections to the First Subpoena. E-Numerate requested that ISW produce additional documents or, in lieu of producing additional documents, complete and certify to the accuracy of a blank table that E-Numerate attached to its letter. (**Exhibit 9**.)

E-Numerate's table sought *10 years* of financial and usage information for SEC filings with Certent DM, from fiscal years 2013 through 2022. The table requested that ISW break down its revenues and financial information into multiple

subcategories: "Technology & Licensing"; "Consulting / Professional Services;" "Other SEC Filing Related"; "Discounts / Allowances (Net)"; "Total Revenue (SEC Filing Products & Services); "Estimated Portion Attributable to SEC Filing Platform"; "Estimated Operating Income"; and "Operating Margin (%)". The table also sought the number of SEC filing customers and number of SEC filings processed per fiscal year for the same 10-year period. The table, however, did not seek any technical information regarding Certent DM.

ISW objected to E-Numerate's requests on multiple grounds, including: E-Numerate could not enforce the First Subpoena, which was nearly 21 months old and to which ISW had already responded by objecting and producing documents; even if enforceable, the First Subpoena did not request all of the information referenced in E-Numerate's table; and E-Numerate could not compel ISW to unearth old records and create a document as E-Numerate had requested. ISW invited E-Numerate to schedule a call to meet and confer. Attached as **Exhibit 10** is a copy of the May 12, 2026 letter.

Rather than attempt to meet and confer, E-Numerate emailed the Deposition Subpoena to counsel for ISW on May 14, 2026, attached as **Exhibit 11** (without the attached Deposition Subpoena). The Deposition Subpoena purportedly requires ISW to testify about not only financial information but also a significant amount of technical information regarding Certent DM.

The Deposition Subpoena would have required ISW to appear 15 days later at the offices of E-Numerate's counsel in Wilmington, Delaware. The Deposition

10

Subpoena purportedly required ISW to bring documents to the deposition, but Exhibits A, B, and C to the Deposition Subpoena did not list any document requests: Exhibit A is a list of deposition topics; Exhibit B is a copy of the blank table previously attached to E-Numerate's April 28, 2026 letter; and Exhibit C is a copy of the Protective Order in the Lawsuit. (**Exhibit 9**.)  The Deposition Subpoena does not identify any documents for ISW to produce.

Exhibit A of the Deposition Subpoena identified 10 broad deposition topics, and 74 subtopics, about which ISW was supposed to testify. These topics would cover an immense amount of technical, financial, and usage information regarding Certent CDM, from the time when Certent CDM was being developed to the present (*see* **Exhibit 1**, Exhibit A thereto at 5).  The deposition topics extend far beyond the information sought in E-Numerate's April 28, 2026 table reattached as Exhibit B to the Deposition Subpoena (**Exhibit 9**).

### E.    ISW's Additional Meet and Confer Efforts

On May 26, 2026, ISW counsel conferred with counsel for E-Numerate, advising that ISW would move to quash the Deposition Subpoena, and that ISW wanted to meet and confer with E-Numerate before doing so.  ISW counsel explained its primary objections, including the considerable overbreadth and undue burden the Deposition Subpoena would impose through the 10 deposition topics and 74 deposition subtopics topics covering a more than 10-year period.

ISW also advised, through counsel, that it did not believe it readily possessed the information requested in E-Numerate's table, as ISW did not maintain SEC-specific revenue or customer usage information in connection with the Certent DM

11

product, and that ISW did not have reasonable access to Certent DM information that pre-dated ISW's 2020 acquisition of Certent.  E-Numerate counsel expressed a willingness to change the date of the deposition and narrow the scope of the Deposition Subpoena but did not provide any details.  ISW counsel asked that E-Numerate withdraw the Deposition Subpoena and issue a new subpoena with the revised and narrowed scope, but E-Numerate refused.

After the May 26, 2026 conference, the parties exchanged several emails regarding the Deposition Subpoena.  (*See* email chain from May 26, 2026 to July 8, 2026, attached as **Exhibit 12**.)  Initially, E-Numerate and ISW agreed to a two week extension of ISW's deadline to file its motion to quash to allow the parties time to further confer about the Deposition Subpoena.  (**Exhibit 12**, May 26, 2026 email from O'Rourke; May 27, 2026 email from Jo.)

ISW then contacted E-Numerate counsel several times to schedule another call to discuss how E-Numerate proposed to narrow the Deposition Subpoena, including on June 1, 2026, June 10, 2026, June 23, 2026, June 25, 2026, and July 6, 2026.  (**Exhibit 12**.)  ISW then requested, and E-Numerate agreed in writing, to extend until July 17, 2026 ISW's deadline to move to quash.  (**Exhibit 12**, July 8, 2026 email from Jo.)

During June and July, ISW counsel repeated its earlier requests that E-Numerate send a narrowed list of deposition topics that ISW could review.  (**Exhibit 12**, June 25, 2026 email from Jo.)  E-Numerate finally provided the list on July 7, 2026.  (**Exhibit 12**, July 7, 2026 email from O'Rourke.)  A copy of the revised list of

topics proposed by E-Numerate ("**Revised Topic List**") is attached as **Exhibit 13**. The Revised Topic List generally maintains the same 10 broad categories as the original Deposition Subpoena.  E-Numerate reduced the number of subtopics, but the Revised Topic List still contains 41 subtopics, spanning more than a decade starting from the beginning of Certent DM's development, and covers the same technical and financial information regarding Certent DM.  (Exhibit 13.)

The parties held another live meet and confer conference on July 8, 2026.  ISW counsel again explained that ISW does not maintain revenue or customer information based on SEC filings made through the Certent DM program and thus could not provide the financial and usage information specified in E-Numerate's table.  ISW counsel also said it was not clear why the technical information regarding Certent DM was relevant.  E-Numerate counsel stated it would discuss the matter further with its client, while ISW counsel said they would inquire whether ISW had possession of pre-acquisition documents regarding Certent DM.

On July 15, 2026, ISW counsel offered to provide an affidavit or declaration confirming the following information, in lieu of ISW appearing for a deposition, in an attempt to resolve the disputes over the Deposition Subpoena: (i) confirming the authenticity of the documents ISW had produced to E-Numerate in response to the First Subpoena; and (ii) stating that Certent DM enabled users to use XBRL to prepare and submit filings to regulatory agencies. (*See* July 10, 2026 to July 15, 2026 Email Chain attached as **Exhibit 14**.)  As E-Numerate counsel did not respond to this proposal, the parties were unable to resolve this discovery dispute.

13

**ARGUMENT**

RCFC 26(b)(1) specifies certain limits on discovery. While parties may conduct discovery on any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case, the permissible scope of discovery should also consider, among other things, (i) the importance of the discovery in resolving the issues and (ii) whether the burden or expense of the proposed discovery outweighs its likely benefit. RCFC 26(b)(1).

RCFC 45(d)(1) imposes an obligation on the party or attorney responsible for issuing a subpoena "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." When a party or attorney fails to comply with this duty, the "Court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." RCFC 45(d)(1). Moreover, the Court may, for good cause, issue a protective order to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. RCFC 26(c).

RCFC 45(d)(3)(A) also places certain limits on a party's use of a subpoena:

> [T]he court *must* quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person who is neither a party nor a party's officer to comply beyond the limitations specified in RCFC 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden

14

(emphasis added).

These rules are designed to protect third parties such as ISW from the undue burden for discovery in lawsuits in which they are not a party.  It is "incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, 424 (D. Del. 2003) (granting motion to quash deposition subpoena imposing undue burden); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry). A facially overbroad subpoena should be quashed. *See, e.g., Zoltek Corp. v. United States,* 61 Fed. Cl. 12 (2004).

Here, ISW's motion to quash the Deposition Subpoena should be granted. As described below, the Deposition Subpoena subjects ISW to undue burden and expense by forcing discovery upon a third-party on matters that are not relevant to this case and not proportional to the needs of the case; fails to allow a reasonable time to comply; and requires ISW to comply beyond the geographical limits of RCFC 45. Moreover, ISW's motions should be granted because E-Numerate has waived its opportunity to seek further discovery from ISW by waiting until April 28, 2026 to challenge objections asserted by ISW in October 2024.[3]

---

[3] The Deposition Subpoena also seeks to compel disclosure of ISW's confidential and/or highly confidential technical and business information.  ISW understands that

**A.     The Deposition Subpoena Subjects ISW to Undue Burden and Expense by Seeking Dozens of Categories of Information Over a Decade-Plus Time Period, Including Information Unavailable to ISW.**

The Deposition Subpoena is unduly burdensome because it would require ISW to testify on 10 deposition topics and at least 41 subtopics, covering at least a 10-year time-period, and a vast amount of technical, financial, and usage information regarding Certent DM that is not relevant or material to the Lawsuit.  (*See* Exhibit 1, Deposition Subpoena, at Exhibit A and Exhibit 13, Revised Topic List.)

The topics as written would require ISW to disclose virtually every aspect to the Certent DM software, including its design, architecture, and operations, the validation rules used by Certent DM, the program's ability to transform numerical values in different markup languages, the program's ability to link and edit multiple documents in differing products/formats, how the program uses macros to perform a number of different functions, and generally how the program receives, validates, processes, renders, transmits, or otherwise handles filings with the SEC.

ISW is not a party to this case, and ISW's product is not at issue.  The potential relevance of ISW's financial and technical information regarding Certent DM is vastly outweighed by the extreme burden the Deposition Subpoena seeks to impose. E-Numerate's claims in this Lawsuit are against the United States and are based specifically on the use of XBRL, a computer markup language, to make filings with the SEC, as stated in the United States' Statement of Interest.  (Second Am. Compl., D.E. 53, ¶¶ 10-13, 51, 65, 82, 99, 113, 132, 152, and 172.)  If E-Numerate requires

there is a protective order entered in the Lawsuit, and ISW reserves all rights and objections with respect to its protected information.

16

information to confirm whether XBRL is used to validate or submit filings to the SEC or other government agencies, E-Numerate should seek the information from the United States, who should have such information since its agencies set the requirements for the filings.  (*See, e.g.,* Exhibit 13, Revised Topic List, at topic no. 8, seeking testimony on the "SEC's role, requirements, technical guidance, and acceptance criteria relating to … Certent CDM…from 2013 to 2022," which undisputably covers information that should be in the SEC's possession,)   E-Numerate should not be burdening a non-party with discovery that E-Numerate can obtain by a party to the action. *See, e.g., Kamen Soap Products Co. v. United States*, 110 F.Supp. 430, 442, 124 Ct. Cl. 519 (1953) (granting motion to quash for documents that were available and could be obtained by a party without a subpoena); *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394-95 (D. Colo. 1998) (status as third party is a factor that weighs against disclosure, particularly when party seeking discovery has not exhausted discovery efforts against the other party).

There is no dispute that Certent DM enables users to make SEC filings using XBRL.  (Fichter Decl., **Exhibit 15**, ¶ 6).  There is no justification for allowing E-Numerate, who offers software solutions with certain similarities to Certent DM, to take extensive discovery regarding highly technical and confidential information about Certent DM that has little to no relevance to the Lawsuit.  E-Numerate has not explained why extensive and detailed technical information about Certent DM (*see* Exhibit 13, Revised Topic List, at topic nos. 1-6, 9-10) is now relevant to its case, when E-Numerate did not previously seek any technical information about Certent DM

17

following ISW's production of documents in October 2024 or in E-Numerate's follow-up request for financial information in its April 28, 2026 letter.

With respect to financial information, ISW has already advised E-Numerate that ISW does not track revenues for Certent DM related specifically to SEC filings or other filings with regulatory agencies (whether generally or in any of the subcategories specified by E-Numerate) because ISW does not charge customers based on this feature, nor does ISW keep documents in the ordinary course of business that identify which customers use this software for federal regulatory filings or how many such filings they make. (Fichter Decl., **Exhibit 15**, ¶¶ 8-10).  Revenue information regarding Certent DM thus would have minimal relevance to the Lawsuit.

The Deposition Subpoena sought to force ISW to create financial summaries after ISW objected to creating the table.  E-Numerate's actions further demonstrate that it did not consider the requested information important to its case, as E-Numerate failed to promptly challenge ISW's 2024 objections to producing further information and instead waited until the eve of the close of discovery in 2026 to seek additional discovery from ISW.

Moreover, forcing ISW to prepare one or more witnesses to testify about the dozens of topics listed in the Deposition Subpoena, or to create the table E-Numerate had requested in lieu of a deposition testimony, would impose be an undue burden and expense upon ISW, particularly when balanced against the nominal relevance to the Lawsuit.  ISW acquired the Certent DM product near the end of 2020 and there

18

have been significant changes in the company and its products over the years, including the methods and formats for tracking and reporting financial information since the acquisition.  (Fichter Decl., **Exhibit 15**, ¶ 7.)  ISW does not have existing business records that provide the specific subcategories of revenue information, operating income, or operating margin percentages that E-Numerate sought in the table it created and asked ISW to complete.  (Fichter Decl., **Exhibit 15**, ¶¶ 8-9.)  For the remaining non-revenue information sought by the table, ISW is not aware of the existence pre-acquisition records that would provide responsive information for the years before 2021; for fiscal years after the 2020 acquisition, ISW does not maintain records in the ordinary course that readily provide the information.  (Fichter Decl., **Exhibit 15**, ¶ 10.)

Even if it were feasible to identify some of the information covered by the deposition topics, providing detailed technical and financial information on Certent DM over a 10-plus year time period likely would require multiple ISW representatives to dedicate several weeks, if not months, to research the issues, at considerable cost.  Most of the information sought by E-Numerate for fiscal years 2013-2022 is for the time period before ISW acquired Certent DM near the end of calendar year 2020, or approximately 8 of 10 years.  The documents ISW possesses in connection with its acquisition of the Certent DM product are part of documents stored in approximately 237 boxes in a storage facility in Northern California.  The documents are in hard copy format only, as they have not been scanned or digitized.  (Besque Decl., **Exhibit 15**, ¶ 3.)  There may be approximately 592,500 to 711,000

19

pages of records within these 237 boxes.  (Besque Decl., **Exhibit 15**, ¶ 4.)  Retrieving, scanning, and identifying and analyzing potentially relevant information would force ISW to expend an unreasonable amount of resources, both in terms of time and expense, without any assurance of locating relevant information.  (Besque Decl., **Exhibit 15**, ¶ 5; Fichter Decl., **Exhibit 14**, ¶ 11-12.)

ISW should not be subjected to the burden and expense of searching a decade or more of records and analyzing them to prepare for a deposition on a broad array of topics, particularly when E-Numerate delayed in seeking this information until the eve of the discovery deadline.  The Deposition Subpoena should be quashed to avoid subjecting ISW to undue burden, expense, and harassment.

## B.    The Deposition Subpoena Did Not Allow a Reasonable Time to Comply.

The Deposition Subpoena also should not be enforced because it failed to provide a reasonable time to comply.  As noted above, the Deposition Subpoena covers a wide range of technical, financial, and usage information regarding Certent DM over at least a 10 year period.  Even if ISW could locate responsive information, the Deposition Subpoena initially gave ISW a mere 15 days to prepare and appear.  E-Numerate did not enforce the original deposition date, but the parties to the Lawsuit do not agree on whether third-party depositions should be taken after the current discovery deadline of June 5, 2026. (D.E. 216, Joint Status Report, at 2-4, 8-10.)  Even if the Court agreed to extend third-party discovery until the United States' proposed extension of fact discovery until August 31, 2026 (D.E. 216, Joint Status Report, at 7), or E-Numerate's proposed extension until September 30, 2026 (D.E. 216, Joint

Status Report, at 2), that would give ISW a matter of weeks to prepare multiple witnesses to testify on the dozens of topics and subtopics listed in the Deposition Subpoena or the Revised Topic List. The fact that E-Numerate waited until the close of discovery (and as of the filing of this Motion, it is now after the close of fact discovery) to seek ISW's deposition does not excuse E-Numerate's failure to give ISW a reasonable amount of time to comply. For this reason also, the Deposition Subpoena should be quashed.

**C.** **The Deposition Subpoena Improperly Requires ISW to Comply Beyond the Geographical Limits.**

RCFC 45(c)(1)(A) specifies the place of compliance for a deposition subpoena as follows: "A subpoena may command a person to attend a … deposition only … within 100 miles of where a person resides, is employed, or regularly transacts business in person." Although the Court of Federal Claims has nationwide jurisdiction, the Court has stated that "significant constraints" apply to the exercise of this power. *Scott Timber, Inc.. v. United States,* 93 Fed. Cl. 498, 499 & n.2 (2010).

ISW's principal office, and its only office in the United States, is in Raleigh, North Carolina (**Exhibit 2**). ISW cannot be compelled by subpoena alone to appear for a deposition in Wilmington, Delaware, more than 100 miles from where ISW resides or regularly transacts business. *See FS Med. Supplies, LLC v. TannerGAP, Inc.*, 2024 U.S. Dist. LEXIS 60738, *7, 2024 WL 1419761 (W.D.N.C. 2024) (noting that the district where a company's headquarters are located is a proper place of compliance for a subpoena, but finding that subpoenaed party regularly transacted business in the place of compliance specified by the subpoena since it had an office

21

location within 100 miles) (citing, among others, *Moore v. Pooches of Alrgo, Inc.*, No. 8:20-CV-2184-MSS-SPF, 2023 U.S. Dist. LEXIS 47798, 2023 WL 2584466, at *2 (M.D. Fla. Mar. 21, 2023) ("The district of compliance for a nonparty corporation is where the corporation is headquartered.")).[4]

E-Numerate cannot cure the defect in the Deposition Subpoena by offering to take ISW's deposition by remote means. Using remote deposition technology does not permit a party to extend the geographical limits of a subpoena. *See Kirkland v. United States Bankr. Court for the Cent. Dist. of Cal. (In re Kirkland)*, 75 F.4th 1030, 1051-1052 (9th Cir. 2023) ("[W]e conclude that despite changes in technology and professional norms, the rule governing the court's subpoena power has not changed and does not except remote appearances from the geographical limitations on the power to compel a witness to appear and testify at trial… ."); *see also Broumand v. Joseph*, 522 F. Supp. 3d 8, 23-24 (S.D.N.Y. 2021) (holding subpoenas unenforceable to compel witnesses to appear outside the 100-mile limitation despite the use of remote video testimony, as permitting remote technology to satisfy compliance "would render Rule 45(c)'s geographical limitations a nullity.")

**D.     E-Numerate Has Waived Its Opportunity to Seek Further Discovery from ISW.**

E-Numerate has waived any right to further discovery from ISW, whether through document requests or deposition testimony, because it remained silent for 18

---

[4] The Rules Committee Notes to RCFC 45 confirms that RCFC 45 largely conforms to Rule 45 of the Federal Rules of Civil Procedure. *See* 2002 Rules Committee Note, RCFC (as amended July 29, 2024) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

months in the face of ISW's objections to E-Numerate's 2024 First Subpoena seeking ISW's financial and usage information.  E-Numerate issued its initial First Subpoena on July 17, 2024.  (**Exhibit 3**.)  ISW produced documents in response to that subpoena, subject to and without waiver of its objections, on October 31, 2024, and specifically advised E-Numerate that it would not produce financial or usage information with respect to its software without further discussion with E-Numerate counsel to understand the relevance of this confidential business information. (**Exhibit 7**.)

E-Numerate did not download ISW's documents until more than seven months after ISW made the documents available and, even then, did not raise any issues regarding ISW's objection to producing additional information.  (**Exhibit 8**.)  E-Numerate then waited until April 28, 2026 to request that ISW create a new table of information suited to E-Numerate's needs, purportedly pursuant to the July 2024 First Subpoena to which ISW had already responded.  (**Exhibit 9**.)  That follow-up request did not seek any technical information but only financial information that ISW does not maintain.  When ISW appropriately objected to the April 28, 2026 letter, E-Numerate did not engage in any discussion with ISW but instead issued its invalid and unduly burdensome Deposition Subpoena on May 13, 2026 to take ISW's deposition 15 days later on May 29, 2026, one week before the close of fact discovery.

If the discovery sought by E-Numerate were truly material to the Lawsuit, E-Numerate should have followed up with ISW with sufficient time before the discovery deadline.  Instead, E-Numerate remained silent for 18 months in the face of ISW's

23

objections, which should be deemed a waiver of E-Numerate's ability to seek further discovery from ISW.  E-Numerate should not be able to cure its lack of diligence by merely issuing another subpoena on the eve of the discovery deadline, particularly a subpoena that is invalid and that should be quashed under RCFC 45.

## E.    E-Numerate Should Be Sanctioned under RCFC 45(d)(1).

For the reasons shown above, E-Numerate failed to comply with its duty under RCFC 45(d)(1) "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Accordingly, ISW moves this Court to impose an appropriate sanction against E-Numerate under RCFC 45(d)(1) by awarding ISW its reasonable attorneys' fees in defending against the Deposition Subpoena.

## CONCLUSION

For the foregoing reasons, ISW's Motion to Quash Plaintiffs' Subpoena to Testify at a Deposition and to Produce Documents should be granted.  ISW respectfully requests entry of an order quashing the Deposition Subpoena, prohibiting E-Numerate from seeking any further discovery from ISW in this Lawsuit, and awarding ISW its attorneys' fees in defending against the Deposition Subpoena.

Respectfully submitted this 17th day of July, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

/s/ Jackson W. Moore, Jr.
Jackson W. Moore, Jr.
NC Bar No. 29912
P.O. Box 2611
Raleigh, NC 27602-2611

24

T: (919) 821-1220
jmoore@smithlaw.com

(Other counsel not yet admitted)
Michael W. Mitchell
N.C. Bar No. 16750
Jang H. Jo
N.C. Bar No. 35686
mmitchell@smithlaw.com
jjo@smithlaw.com

*Attorneys for Non-Party Insightsoftware, LLC*

25

## RCFC 7.3 AND 26 CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that reasonable and good faith efforts to discuss the foregoing motions with counsel for E-Numerate were held prior to filing the motions, as described herein, but the parties were not able to resolve this dispute.

This the 17th day of July, 2026.

> SMITH, ADERSON, BLOUNT,
> DORSETT, MITCHELL & JERNIGAN,
> LLP
>
> /s/ Jackson W. Moore, Jr.
> Jackson W. Moore, Jr.
> N.C. Bar No. 29912
> jmoore@smithlaw.com
> Jang H. Jo
> N.C. Bar No. 35686
> jjo@smithlaw.com
> P.O. Box 2611
> Raleigh, North Carolina 27602
> Phone:  (919) 821-1220

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Motion to Quash was served on the parties to this action by filing it with the Court's electronic-filing system pursuant to RCFC 5(d)(1)(B):

This the 17th day of July, 2026.

SMITH, ADERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN,
LLP

/s/ Jackson W. Moore, Jr.
Jackson W. Moore, Jr.
N.C. Bar No. 29912
P.O. Box 2611
Raleigh, North Carolina 27602
jmoore@smithlaw.com
Phone:  (919) 821-1220
Fax:  (919) 821-6800

27