**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| E-NUMERATE SOLUTIONS, INC, and E-NUMERATE, LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE UNITED STATES,<br><br>                    Defendant. | No.: 1:19-cv-00859-MHS |

**<u>PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL A SUBSTANTIVE RESPONSE TO GOVERNMENT INTERROGATORY NO. 19</u>**

O'KELLY & O'ROURKE, LLC

Gerard M. O'Rourke
Sean T. O'Kelly
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
302-778-4000
sokelly@okorlaw.com
gorourke@okorlaw.com
*Attorneys for Plaintiffs*

Dated: August 7, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ............................................................................................................... 2

II. FACTUAL BACKGROUND ............................................................................................. 3

    A. Interrogatory No. 19 demands new claim-chart work concerning e-Numerate's historical software and products. ......................................................................................................... 3

    B. The Testimony Regarding The June 1998 developmental prototype. .................................. 4

    C. Plaintiffs produced the extracted historical software materials, which the Government's technical expert analyzed before Government counsel extensively examined the inventor. ..... 5

III. LEGAL STANDARD ....................................................................................................... 6

IV. ARGUMENT .................................................................................................................... 7

    A. The Government Already Has the Information Concerning e-Numerate's Historical Software Through Its Own Technical Analysis and Two Full Days of Deposition Discovery of e-Numerate's Inventor. ...................................................................................................... 7

    B.    Interrogatory No. 19 improperly seeks expert claim mapping and analysis of prototype software through fact discovery. ........................................................................................... 9

    C. Interrogatory No. 19 Is Internally Inconsistent: Its Definition Refers to 30 Claims, While Its Operative Text Reaches 289 Claims, the Dismissed '708 Patent, and "All Disclosures". ........ 11

    D. The Clear Majority of Courts have rejected the Government's position. ............................ 13

V. CONCLUSION ................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    839 F.3d 1034 (Fed. Cir. 2016) ........................................................................................... 14

*ATI Techs. v. Iancu*,
    920 F.3d 1362 (Fed. Cir. 2019) ........................................................................................... 14

*Beckman Coulter Inc. v. Sysmex Am. Inc.*,
    2019 U.S. Dist. LEXIS 233219 (N.D. Ill. 2019) ................................................................ 13

*Ecolab USA Inc. v. Diversey, Inc.*,
    2015 U.S. Dist. LEXIS 63978 (D. Minn. May 15, 2015) .................................................... 13

*Green Revolution Cooling, Inc. v. Riot Platforms, Inc.,*
    2025 U.S. Dist. LEXIS 116820 (W.D. Tex. Jan. 23, 2025) ................................................ 13

*Hutchinson Tech. Inc. v. Suncall Corp.*,
    No. 21-cv-2618 (D. Minn. Jan. 4, 2024) ............................................................................. 11

*Infernal Tech., LLC v. Microsoft Corp.*,
    2019 U.S. Dist. LEXIS 186444 (E.D. Tex. June 4, 2014) ................................................... 14

*Leader Techs., Inc. v. Facebook Inc.*,
    2009 U.S. Dist. LEXIS 93807 (D. Del. Sept. 4, 2009) .................................................... 4, 13

*Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*,
    68 F.4th 1298 (Fed. Cir. 2023) ............................................................................................ 14

*Morpho Detection, Inc. v. Smiths Detection, Inc.*,
    957 F. Supp. 2d 655 (E.D. Va. 2013) .................................................................................. 13

*Sonix Tech. Co. Ltd v. Yoshida*,
    2014 WL 11878354 (S.D. Cal Dec. 5, 2014) ...................................................................... 13

*Tyco Healthcare Grp. v. Ethicon Endo-Surgery, Inc.*,
    774 F.3d 968 (Fed. Cir. 2014) ............................................................................................. 14

**Statutes**
28 U.S.C. § 1498(a) ...................................................................................................................... 3

**Rules**
RCFC 26(b)(1) ............................................................................................................................... 6
RCFC 26(b)(2) ............................................................................................................................ 7, 9
RCFC 33(a)(2) ........................................................................................................................... 7, 11

## <u>TABLE OF EXHIBITS</u>

Exhibit 1: Excerpts from the July 1, 2026 Deposition of Russell T. Davis

Exhibit 2: Excerpts from the July 2, 2026 Deposition of Russell T. Davis

Plaintiffs e-Numerate Solutions, Inc., and e-Numerate, LLC (collectively, "e-Numerate") oppose the Government's motion because the Government already possesses the very information it seeks through Interrogatory No. 19. In June 2025, Plaintiffs produced materials extracted from several historical CDs and a Zip disk, including the June 1998 prototype and later software associated with e-Numerate's commercial product, Numerator. Neither Plaintiffs' forensic consultant nor Russell Davis, the inventor or co-inventor of each patent-in-suit, was able to run the historical software using current systems.

The Government's technical expert succeeded in running the software. Using the produced materials, the expert accessed and ran the nearly three-decades-old software, analyzed the source code, and prepared technical exhibits. Shahar Harel, the Government's lead counsel, then used those materials during Mr. Davis's two-day deposition to question him extensively about e-Numerate's software, conception and reduction to practice, and specific patent claims and limitations.

The Government therefore already possesses and has analyzed the historical software materials on which its motion principally relies. Its broader demands concerning other commercial products, versions, tools, and systems associated with PricewaterhouseCoopers, an e-Numerate licensee, are unsupported and would require new expert technical analysis. Interrogatory No. 19 would require e-Numerate to recreate technical work the Government's expert has already completed and to prepare new product-by-product, limitation-by-limitation claim charts concerning other products and systems. In addition, the clear majority of cases deciding the issue presented by the Government's motion hold that a patentee does not need to prepare claim charts in response to an Interrogatory seeking this information. This Court should follow the majority rule, and deny the Government's motion to compel.

## I. INTRODUCTION

Interrogatory No. 19 does not seek information the Government lacks. The Government already has the produced historical software materials, the analysis prepared by its technical expert, and extensive sworn testimony from inventor Russell Davis concerning the same subjects.

Instead, the interrogatory requires e-Numerate to create a new legal and technical work product. It demands product-by-product and limitation-by-limitation charts identifying the "complete factual and legal basis" for any contention, every allegedly present claim limitation, source-code citations, all related documents, and knowledgeable witnesses. ECF No. 235-5 at 7.

That demand is disproportionate and not authorized by the clear majority of courts that have considered this issue. The Government's expert already accessed, operated, and analyzed the historical software and prepared the materials the Government's counsel used during Mr. Davis's July 1 and July 2, 2026 depositions. By contrast, e-Numerate's efforts to access and run the nearly three-decades-old software using current systems were unsuccessful. To the extent the interrogatory reaches other commercial products and systems, the Government does not identify the particular product, version, claim, limitation, or factual information allegedly missing.

Finally, the Government's characterization of Interrogatory No. 19 as a narrow request is misleading. Its operative language is not limited to the 31 claims identified in e-Numerate's March 26, 2026 Second Supplemental Final Infringement Contentions. Instead, the Interrogatory asks about "any of the inventions disclosed" in the seven currently asserted patents—which the Government says contain 289 claims—expressly includes the dismissed '708 patent, and extends to "all disclosures pertaining thereto." ECF No. 235-5 at 7; ECF No. 235 at 10. The Government already has the produced historical software materials, has performed the relevant technical analysis of that software, and has examined inventor Russell Davis extensively over two full days.

2

Its broader demands concerning other e-Numerate products are undefined and would require new expert technical analysis. RCFC 26 does not require e-Numerate to perform that work through a fact interrogatory.  Similarly, the clear majority of Courts that have considered this very issue reject the Government's position outright.  This Court should follow that precedent and deny the Government's motion.

## II. FACTUAL BACKGROUND

### A. Interrogatory No. 19 demands new claim-chart work concerning e-Numerate's historical software and products.

This action under 28 U.S.C. § 1498(a) concerns the Government's alleged use of inventions claimed in seven patents. The accused instrumentalities are Government systems and processes. e-Numerate's historical developmental software and commercial products are not accused instrumentalities, and are entirely irrelevant to whether the Government infringes the asserted patents.

On May 4, 2026, with fact discovery then scheduled to close on June 5, 2026, the Government served Interrogatory No. 19. ECF No. 209 at 29. The interrogatory demands, for each broadly defined e-Numerate product or system allegedly embodying any invention disclosed in eight listed patents, a limitation-by-limitation chart setting forth the "complete factual and legal basis" for the contention, every allegedly present limitation, source-code citations, all related documents, and knowledgeable witnesses. ECF No. 235-5 at 7.

The definition of "Your Product and/or System" is expansive but does ***not*** expressly identify prototypes, developmental versions, interim builds, or experimental software. It lists numerous commercial products and development tools, items identified anywhere in e-Numerate's production, and anything sold, licensed, delivered, or developed for PricewaterhouseCoopers ("PwC"), which e-Numerate identified as a licensee. ECF Nos. 235-5 at 5; 235-6 at 18-21. Based

on the plain language of the interrogatory, it does not encompass the June 1998 developmental prototype that the Government seeks to have e-Numerate chart.

e-Numerate timely objected that the interrogatory sought expert opinion, claim-construction analysis, and infringement-style mapping of its non-accused historical software and products. ECF No. 235-4 at 7-8. It confirmed that it had produced or identified historical technical materials, including source code, and reserved the right to rely on those materials "for any purpose for which they may properly be relevant." ECF No. 235-4 at 8 (emphasis added). Its June 15, 2026, letter likewise stated that the materials "may be relevant for proper purposes." ECF No. 235-2 at 4-5 (emphasis added).  e-Numerate also referred the Government to the *Leader Techs., Inc. v. Facebook Inc.*, No. 08-862-JJF-LPS, 2009 U.S. Dist. LEXIS 93807, at \*5-\*6 (D. Del. Sept. 4, 2009), one of the leading cases supporting the majority rule that charting is not required.

**B. The Testimony Regarding The June 1998 developmental prototype.**

e-Numerate's inventor, Russell Davis, testified that he conceived the initial concepts in late 1997 and worked throughout the first half of 1998 to develop a working implementation. By June or early July 1998, he had developed an initial working prototype using Visual Basic under Microsoft Access. Davis 30(b)(6) Tr. 16:11-20:20, 27:5-28:21, 197:5-12 (July 1, 2026) (Pls.' Ex. 1).

Numerator was a later commercial product. e-Numerate's supplemental interrogatory response states that Numerator Lite was publicly demonstrated at XML DevCon2000 in New York in late June 2000 and that sales are believed to have commenced afterward. ECF No. 235-6 at 16-18. The response concerning Numerator was deliberately limited: upon information and belief, "aspects of subject matter described and/or claimed in one or more of the patents-in-suit" were

contained in the product. *Id.* at 16-17. It did not identify any claim, not did it affirmatively state that Numerator satisfied every limitation of any claim.

**C. Plaintiffs produced the extracted historical software materials, which the Government's technical expert analyzed before Government counsel extensively examined the inventor.**

On June 25, 2025, e-Numerate notified the Government that it had located several historical CDs and a Zip disk, provided an inventory of their contents, and offered inspection of the original media. ECF No. 235-7 at 1. Plaintiffs' forensic consultant extracted the electronic contents for production but could not run the historical software. Plaintiffs produced those contents; the original media were not transferred. Using the produced materials, the Government's technical expert performed the work necessary to access, run, and analyze the historical software. Davis 30(b)(6) Tr. 194:22-195:5 (July 1, 2026) (Pls.' Ex. 1).

At the Government's July 1, 2026 Rule 30(b)(6) examination of Russell Davis, e-Numerate's corporate representative and the inventor or co-inventor of each patent-in-suit, Shahar Harel, the Government's lead counsel, used the analysis prepared by the Government's technical expert to question Mr. Davis extensively about the operation of e-Numerate's historical software, its source code, conception and reduction to practice, and specific patent claims and limitations. Mr. Harel selected particular patents, claims, source-code passages, software versions, and technical exhibits and questioned Mr. Davis directly about whether specific functions of the software corresponded to and satisfied individual claim limitations. Davis 30(b)(6) Tr. 12:11-13:7, 15:10-16:16, 28:14-34:17, 178:1-179:22, 193:16-195:5, 201:19-202:7, 212:4-214:21 (July 1, 2026) (Pls.' Ex. 1).

The examination continued during Mr. Davis's individual deposition on July 2, 2026. Using materials created from the analysis prepared by the Government's technical expert, Mr.

Harel again questioned e-Numerate's inventor extensively about how the historical software operated and whether particular functions corresponded to and satisfied specific patent claims and limitations. Mr. Harel did not merely have an opportunity to conduct claim-specific and limitation-specific questioning—he did so extensively over two full days, using the Government's expert analysis, the produced historical software materials and source code, patent claims, screenshots, and expert-prepared technical exhibits. Davis Individual Tr. 580:3-581:19, 589:13-595:22 (July 2, 2026) (Pls.' Ex. 2). By the time the Government filed this motion on July 20, 2026, it had the produced historical software materials, the analysis prepared by the Government's technical expert, and two days of sworn testimony from inventor Russell Davis concerning the very subjects covered by Interrogatory No. 19. There was therefore no legitimate need to compel e-Numerate to recreate information already available to the Government. The interrogatory instead seeks to force e-Numerate to adopt product-by-product and limitation-by-limitation technical positions before those issues are properly addressed, if at all, through expert discovery.

### III. LEGAL STANDARD

RCFC 26 permits discovery of nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. RCFC 26(b)(1). In deciding whether discovery is proportional, the Court considers the parties' relative access to the information, the importance of the proposed discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. *Id.* The Court "must limit" discovery that is unreasonably cumulative or duplicative, can be obtained from a more convenient or less burdensome source, or is sought after the requesting party has had ample opportunity to obtain the information. RCFC 26(b)(2)(C).

RCFC 33(a)(2) permits contention interrogatories but authorizes the Court to defer an interrogatory seeking an opinion or contention applying law to fact until designated discovery is

complete or another appropriate time. Interrogatory No. 19 crosses that line. To the extent any limitation-by-limitation mapping is ultimately necessary, it is expert work and should be addressed, if at all, during expert discovery—not compelled during fact discovery through an interrogatory directed to the plaintiffs.

## IV. ARGUMENT

### A. The Government Already Has the Information Concerning e-Numerate's Historical Software Through Its Own Technical Analysis and Two Full Days of Deposition Discovery of e-Numerate's Inventor.

The most important fact is also the simplest: the Government already has and analyzed the produced historical software materials on which its motion principally relies. This is not a case in which e-Numerate possesses inaccessible historical software that the Government cannot investigate. After Plaintiffs produced the extracted materials, the Government's technical expert performed the work necessary to access and run the historical software, analyzed the source code, prepared technical exhibits, and supplied the basis for two full days of extensive deposition questioning of Russell Davis, e-Numerate's inventor and corporate representative.

The parties' relative access to information concerning e-Numerate's historical software strongly favors denial: the Government has the software and the completed analysis prepared by its technical expert, while e-Numerate does not possess comparable technical analysis. e-Numerate's efforts to open and run the nearly three-decades-old software using current systems were unsuccessful. Although only e-Numerate can identify the litigation contentions it advances, it is inappropriate during fact discovery to require e-Numerate to retain a technical expert, recreate the work necessary to operate nearly three-decades-old software, and reproduce the Government's expert analysis in limitation-by-limitation claim charts. To the extent such expert work is ultimately necessary, it should be addressed, if at all, during the expert-discovery period.

The timing is significant. On July 1 and July 2, 2026, Mr. Harel used the Government's expert analysis to question e-Numerate's inventor, Russell Davis, for two full days about the operation of e-Numerate's historical software, conception and reduction to practice, source code, specific patents and claims, and individual claim limitations. Mr. Harel did not merely have an opportunity to conduct claim-specific and limitation-specific questioning—he did so extensively, including by asking whether particular functions of the historical software corresponded to and satisfied individual limitations. The Government did not file this motion until July 20, 2026. By then, the Government had the produced historical software materials, the completed analysis prepared by its technical expert, and extensive sworn testimony from inventor Russell Davis concerning the same subjects. The Government therefore already possessed the information it now seeks to compel e-Numerate to recreate through Interrogatory No. 19.

Nor is the motion necessary to prevent the trial surprise the Government asserts. The Government already possesses the produced historical software materials, its own expert's analysis, and two full days of sworn testimony from e-Numerate's inventor concerning the same evidence. e-Numerate does not claim a right to rely on undisclosed evidence. But disclosed evidence does not become a surprise merely because e-Numerate has not reformatted it into the Government's preferred charts. To the extent any limitation-by-limitation technical mapping is ultimately necessary, it should be addressed, if at all, through the expert-discovery process rather than compelled during fact discovery. The Government cannot use its own expert's analysis of e-Numerate's historical software during the depositions and then characterize e-Numerate's later reliance on that same evidence as trial by ambush. The evidence is known; and the parties may disagree about what it proves.

8

The Government's reliance on Footnote 4 of its motion does not change the analysis. Whatever separate issue the Government may seek to raise about when the historical media were located or their contents produced, that timing dispute does not establish any present discovery need. Plaintiffs produced the extracted materials in June 2025, and the Government had them for more than ten months before serving Interrogatory No. 19 and for more than a year before filing this motion. ECF No. 235 at 2. During that period, the Government did not pursue the product-by-product, limitation-by-limitation information it now seeks to compel. The June 25, 2025 correspondence also reflects e-Numerate's offer to permit inspection of the original CDs and Zip disk. ECF No. 235-7 at 1. Most importantly, the Government has not been impeded in its investigation: its technical expert accessed, operated, and analyzed e-Numerate's historical software, and Government counsel examined inventor Russell Davis about it over two full days.

**B. Interrogatory No. 19 improperly seeks expert claim mapping and analysis of prototype software through fact discovery.**

The Government improperly equates identifying a product and the asserted claims allegedly practiced with preparing an exhaustive, element-by-element technical claim chart. Those are not the same disclosures. The first identifies a factual contention; the second requires technical claim construction, source-code analysis, and expert opinion. Relevance alone does not make discovery permissible; the requested discovery must also be proportional to the needs of the case. RCFC 26(b)(2)(C) requires limitation when discovery is cumulative or duplicative, available through a less burdensome source, or sought after ample opportunity to obtain it. Each consideration weighs against the requested order. Here, the extracted historical software materials and related documents have been produced, the Government's technical expert has analyzed that software, and inventor Russell Davis has been examined for two full days on the same subjects.

The Government therefore already has the information it seeks through Interrogatory No. 19, and the motion identifies no concrete factual gap. As a result, it is duplicative of information the Government possesses.

Interrogatory No. 19 does not seek ordinary factual information; it requires technical expert analysis of whether nearly three-decades-old software and source code satisfy each limitation of the patent claims. Determining whether the software and source code satisfies every limitation requires claim construction, technical source-code analysis, and application of legal standards to complex facts. The Government's conduct confirms the point: it used a technical expert to perform the work necessary to access and run the historical software, analyze the code, and prepare technical exhibits. It cannot characterize the same undertaking as routine fact disclosure when demanding that e-Numerate perform it.

Interrogatory No. 19 imposes a sweeping and undefined burden across numerous e-Numerate products, versions, tools, and systems. The Government's definition encompasses numerous Numerator variants, publishing and conversion suites, developer toolkits, anything identified anywhere in e-Numerate's production, and anything developed for or supplied to PricewaterhouseCoopers. ECF No. 235-5 at 5. However, the definition does not expressly identify prototypes or interim developmental versions and, as a result, does not provide a basis for e-Numerate to chart the prototype. The motion provides no product count, no estimate of the number of charts, no estimate of attorney or expert time, and no explanation why duplicating the Government expert's work justifies the burden.

Timing reinforces the disproportionality. The Government served Interrogatory No. 19 on May 4, 2026, thirty-two days before the scheduled close of fact discovery, although Plaintiffs had produced the extracted historical software materials in June 2025. The Government then used its

expert's analysis to examine Mr. Davis for two full days on July 1 and July 2, 2026, and filed this motion on July 20, 2026. *Hutchinson Technology* denied a late interrogatory seeking claim-by-claim product mapping, holding that the burden—even after the request was narrowed—was disproportionate at that stage of fact discovery. *Hutchinson Tech. Inc. v. Suncall Corp.*, No. 21-cv-2618 at D.I. 251 at pages 13 - 14 (SRN/DLM) (D. Minn. Jan. 4, 2024). The same practical judgment applies with greater force here because the Government has already completed the technical investigation, obtained the relevant testimony, and possesses the information it seeks from e-Numerate through Interrogatory No. 19.

To the extent any limitation-by-limitation technical analysis is ultimately necessary, it should be addressed, if at all, through the expert-discovery process rather than compelled during fact discovery. That sequence follows the ordinary course of litigation: the parties first develop the factual record, and any necessary expert opinions are then disclosed and tested through expert reports, rebuttal reports, and expert depositions. RCFC 33(a)(2) permits contention analysis to be timed after the claims, invalidity theories, and actual evidentiary issues have crystallized. The Government is not prejudiced by that sequence because it already has the produced historical software materials, the source code and related documents, the analysis prepared by its own technical expert, and two full days of sworn testimony from inventor Russell Davis.

**C. Interrogatory No. 19 Is Internally Inconsistent: Its Definition Refers to 30 Claims, While Its Operative Text Reaches 289 Claims, the Dismissed '708 Patent, and "All Disclosures".**

The motion repeatedly calls Interrogatory No. 19 a "narrow" request limited to asserted claims. The operative text says otherwise. On March 26, 2026, within the twenty-eight-day period expressly authorized by the Court's February 26, 2026 Opinion and Order, e-Numerate served its

Second Supplemental Final Infringement Contentions identifying 31 asserted claims. ECF No. 209 at 28. The Government received those contentions and knows which 31 claims e-Numerate presently asserts.

The Government's own discovery definitions are internally inconsistent. Definition 11 directs e-Numerate to use 30 claims when responding to Interrogatory No. 19. ECF No. 235-5 at 2. But Interrogatory No. 19 does not use the defined term "Asserted Claims." Instead, it asks whether e-Numerate's products embody "any of the inventions disclosed" in eight patents, including inventions "described and/or claimed," and seeks "all disclosures pertaining thereto." ECF No. 235-5 at 7. It also expressly includes the dismissed '708 patent.

That conflict is substantial. By the Government's own count, the seven currently asserted patents contain 289 claims. ECF No. 235 at 10. The result is either a demand reaching hundreds of unasserted claims and specification disclosures or a serious ambiguity of the Government's own making. Either way, the Government cannot cure the interrogatory's breadth by describing a narrower request in its motion.

The Government's definition makes Interrogatory No. 19 exceptionally broad and burdensome. It sweeps across numerous e-Numerate products, versions, suites, toolkits, materials identified anywhere in e-Numerate's production, and systems developed for or supplied to PricewaterhouseCoopers. The resulting number of potential product-and-claim combinations is enormous before adding the demanded source-code citations, supporting documents, witnesses, and "complete factual and legal basis" for each contention. The asserted-claim set may also narrow as the litigation proceeds, making extensive charts for claims and implementations that may never be tried particularly wasteful.

**D. The Clear Majority of Courts have rejected the Government's position.**

The clear majority of Court has ruled against requiring a patentee to chart its products against the patent claims. *Leader Techs., Inc. v. Facebook Inc.*, (D. Del. Sept. 4, 2009) 2009 U.S. Dist. LEXIS 93807, 2009 WL 3021168, at *2, *2 ("it would be unduly burdensome to require Leader, as the patentee, to produce detailed claim charts showing precisely how its products practice each of the asserted claims.") (emphasis added); *Green Revolution Cooling, Inc. v. Riot Platforms, Inc.,* 2025 U.S. Dist. LEXIS 116820 (W.D. Tex. January 23, 2025); *Beckman Coulter Inc. v. Sysmex Am. Inc.*, 2019 U.S. Dist. LEXIS 233219, 2019 WL 10250941, *2-3 (N.D. Ill. 2019) (denying motion to compel a claim chart showing where each claim limitation is found in the patentee's products); *Morpho Detection, Inc. v. Smiths Detection, Inc.*, 957 F. Supp. 2d 655, 675 (E.D. Va. 2013); *Ecolab USA Inc. v. Diversey, Inc.*, 2015 U.S. Dist. LEXIS 63978, 2015 WL 2353018, *6 (D. Minn. May 15, 2015); *Sonix Tech. Co. Ltd v. Yoshida*, 2014 WL 11878354, *3 (S.D. Cal Dec. 5, 2014). In fact, the *Green Revolution* Court noted that, "to the extent that such charts are necessary, that information is properly in the purview of technical experts." *Id.* at *29. That is the case here.  To the extent e-Numerate's products including its prototype need to be charted, that should take place in the context of the parties' expert reports.

The small minority of Courts that have adopted the Government's position do not adequately address the burden that such an interrogatory puts on a patentee during fact discovery. *Infernal Tech., LLC v. Microsoft Corp.*, No. 2:18-CV-144-JRG, 2019 U.S. Dist. LEXIS 186444 (*citing UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, No. 6:11-CV-496-LED, 2014 WL 12521379, at *3 (E.D. Tex. June 4, 2014).  This Court should reject these authorities outright particularly, where, as here, the Government's expert has already performed an extensive analysis.

The Federal Circuit decisions cited by the Government in its motion address ultimate substantive proof, not the discovery relief sought here. *Medtronic*, *ATI Technologies*, and *Tyco Healthcare* explain the requirements for conception, reduction to practice, or diligence; *Apple v. Samsung* addresses nexus and objective indicia. *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*, 68 F.4th 1298, 1303 (Fed. Cir. 2023); *ATI Techs. v. Iancu*, 920 F.3d 1362, 1369 (Fed. Cir. 2019); *Tyco Healthcare Grp. v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 975 (Fed. Cir. 2014); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016). None of those Federal Circuit decisions holds that a patentee must prepare claim charts for its historical software or products during fact discovery, addresses software already analyzed by the requesting party's technical expert, or displaces RCFC 26's proportionality requirements. A party's ultimate burden of proof does not dictate every discovery format its opponent prefers.

## V. CONCLUSION

The Government already possesses and has analyzed the produced historical software materials on which its motion principally relies and obtained extensive sworn testimony from inventor Russell Davis concerning that software. The Government's broader demands concerning other commercial products, versions, tools, and systems associated with PricewaterhouseCoopers, an e-Numerate licensee, are unsupported and undefined and would require new product-by-product expert technical analysis. The request is cumulative as to e-Numerate's historical software, disproportionate and expert-driven as to the remaining products, and far broader than the motion represents. The Court should deny the Government's motion to compel.


Respectfully submitted,


14

O'KELLY & O'ROURKE, LLC

*/s/ Sean T. O'Kelly*
Sean T. O'Kelly
Gerard M. O'Rourke
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
302-778-4000
sokelly@okorlaw.com
gorourke@okorlaw.com

Dated: August 7, 2026                    *Attorneys for Plaintiffs*

15